CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY

v.

OLIVER N. SMITH.

*Filed at Ottawa November 17, 1884.*

1. RIGHT OF WAY—GRANT—*incidents to the grant as connected with use intended.* The owner of a twenty-acre lot being desirous of the construction of a railroad over the same, made a deed to the railroad company, reciting that "in consideration of the premises and sixty dollars," he granted, "for the purpose of constructing a railroad, and for all purposes connected with the construction and use of said railroad," the right of way for the same, one hundred feet wide, through the lot and other property, "to have, hold and enjoy the land described, with the appurtenances, unto the said" grantee "and its assigns, forever, for all uses and purposes, or in any way connected with the construction, preservation, occupation and enjoyment of said railroad," with a proviso for a reversion in case the same should cease to be used for railroad purposes: *Held,* that as the casting of smoke, cinders, ashes, sparks of fire, and the shaking of the soil, upon other parts of the lot, was a necessary incident of the railroad, and inseparable from the running of trains upon the railroad, the right to do these acts passed to the grantee and its successors, by necessary implication from the express grant.

2. Where anything is granted, all the means to attain it, and all the fruits and effects of it, are granted also, by presumption of law, and will pass in-

clusive, together with the thing, by the grant of the thing itself, without the words *cum pertinentiis*, and any like words.

3. A mere conveyance of part of a tract of land may not give the grantee the right to make any use of the part granted which will injuriously affect the remaining portion, but when the grant is expressed to be for a particular use, neither the grantor nor one claiming under him can object to such use, and recover damages resulting therefrom.

4. Same—*as to increased uses—whether embraced in grant.* The grant of a right of way over his land by a party, to a railway company, "for all uses and purposes, or in any way connected with the construction, preservation, occupation and enjoyment of said railroad," is broad enough to embrace all uses for railroad purposes, however much increased, and by any other companies authorized by law. If such grantee company consolidates, according to law, with other companies, and thereby greatly increases the use of the right of way, the owner, or his grantee, of adjoining lots can not recover damages caused by such increased use.

5. Where a person conveys a right of way over his land, it will be conclusively presumed that all the damages to the balance of the land, past, present and future, were included in the consideration paid him for his conveyance, the same as an assessment of damages on a condemnation would be presumed to embrace.

6. Eminent domain—*requisites of the petition for condemnation—as to specifying the extent and character of the use.* It is not necessary that a petition for the condemnation of a right of way over a tract of land for a railroad should state the petitioner's purposes fully and completely, giving the number of tracks, and a purpose to allow other companies to use the same. It is sufficient for the petition to show, generally, that the land is needed for railroad purposes.

7. Same—*measure of damages—present and prospective.* Where a right of way is condemned for public use over a tract of land, the owner will be entitled to compensation not only for the value of the land taken, but also for all damages to the residue of the tract, past, present and future, which the public use may thereafter reasonably produce.

8. Recording law—*record of deed—notice to subsequent purchaser.* The record of a deed from the owner of land granting a right of way over the same, one hundred feet wide, for any and all railroad purposes, the use for which purposes injuriously affects other portions of the land adjoining the right of way, is notice to any subsequent purchaser of adjoining lots, of the prior grantee's rights, and such purchaser will occupy no better position than his vendor or grantor.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

This was an action on the case, brought by Oliver N. Smith, against the Chicago, Rock Island and Pacific Railway Company, to recover for damages from the operation of its railroad. The declaration avers that the plaintiff is the owner in fee of lot 10, of Tillotson's subdivision of that part of lot 11 lying west of the Chicago and Rock Island railroad; that the premises were of the value of $5000, and used by plaintiff as a residence; that the defendant's railroad tracks whose operation is complained of, were constructed January 1, 1879, for use as a switching point, and have been so used since; that in the operation of the same, the defendant has unlawfully, unjustly and injuriously caused and permitted to be thrown and deposited upon the plaintiff's property, divers large quantities of smoke, cinders, soot, ashes, sparks of fire, and other noxious and injurious substances; that the soil is shaken, and that the walls of his dwelling are cracked. The plaintiff further avers, that said railroad tracks and switches have been constructed, maintained and operated in such close proximity to plaintiff's property, that necessarily, by reason of such operation in the ordinary and usual way of operating a steam railway for the purposes for which it was constructed and maintained and operated, there has been cast upon his property the substances complained of.

Except upon the question of damages, the facts as stated below appear by stipulation of the parties.

The Rock Island and La Salle railroad was incorporated by the General Assembly, February 27, 1847. Its charter authorized the company to construct, and during its continuance to maintain and continue, a railroad, with single or double track, and with such appendages as might be deemed necessary for the convenient use of the same. February 7, 1851, the act of incorporation was amended, and the Chicago and Rock Island railroad created, with the same powers and privileges. August 20, 1866, the Chicago and Rock Island railroad became, by consolidation with the Chicago, Rock

Island and Pacific railroad of Iowa, merged into the consolidated corporation known as the Chicago, Rock Island and Pacific Railroad Company, which latter corporation, on June 2, 1880, became, by consolidation with various other corporations, the Chicago, Rock Island and Pacific Railway Company, and vested with all the corporate and other franchises, rights and privileges of each of its constituents. The Chicago and Rock Island railroad acquired title to its right of way whose use is complained of, in 1851, by deed from F. Burcky and wife, to said company, which deed was recorded November 3, 1851. Burcky, the then owner of the whole of lot 11, "being desirous for the construction of said railroad," and in consideration of the premises and $60, granted, "for the purpose of constructing a railroad, and for all purposes connected with the construction and use of said railroad," the right of way for the same, one hundred feet wide, through lot 11, and other property in Cook county, "to have, hold and enjoy the land described, with the appurtenances, unto the said grantee and its assigns, forever, for all uses and purposes, or in any way connected with the construction, preservation, occupation and enjoyment of said railroad," with a provision that if the grantee or its assigns should "cease permanently to use said railroad so to be constructed, and the same should be abandoned, so as not to be continued over said premises," the land granted should revert to the grantor. Subsequently, that portion of lot 11 lying west of the railroad was subdivided into lots. October 1, 1873, the plaintiff went into possession of one of these lots (10) under a deed from the Tillotsons, who made the subdivision. The railroad was there when he bought. He thinks that there were at that time two main tracks and one side-track. The company's first main track was laid upon this right of way in the summer of 1852, and has existed since. Other tracks have been built upon the right of way, but at what time, except as to the two westerly side-tracks, does not appear.

These two were built within five years next before the commencement of this action. All the tracks are within the limits of the right of way conveyed by said deed, and are owned, operated and controlled by the defendant.

The defendant filed a plea of the general issue, and of the five, and twenty years statutes of limitation.

The plaintiff upon the trial claimed for damages from the increased traffic upon the two main tracks, and from the operation of the railway upon the two westerly side-tracks. As to damages, he testified that cinders, ashes and smoke are deposited upon the property, and go into the house when the doors and windows are open; that there is a vibration or a jarring when a train passes; that the end of the house next the railroad track has been plastered over twice; that when the mason put on the second coat, he told him to put in plenty of hair, "so that it would not fall off again, which he did;" that within the last three or four years they have had to dry clothes in the house.

There was a trial by the court without a jury; a finding for $350 damages; motions for new trial and in arrest of judgment made and overruled, and exceptions taken. Judgment was entered, which was affirmed by the Appellate Court for the First District, and the defendant took this appeal to this court, the required certificate having been made.

Mr. Thos. F. Withrow, and Mr. J. C. Hutchins, for the appellant:

Burcky's deed conveys the right of way, with the appurtenances, forever, for all purposes connected with the construction, preservation, occupation and enjoyment of the same, for railway purposes, and therefore no right of action vests in any subsequent purchaser of any portion of lot 11, for any result flowing from the prudent operation of the railway. The grant is to be taken most strongly against the grantor. *Middleton* v. *Pritchard*, 3 Scam. 510; *Duryea* v. *Mayor*, 62 N. Y. 592.

Any prohibition upon the use of the thing granted is void. *Craig* v. *Wells*, 11 N. Y. 315.

The grant of a thing carries with it, impliedly, whatever is necessary for enjoying the same.   Touchstone, 89; 2 Blackstone's Commentaries, 36; *Aiken* v. *Boardman*, 2 Metc. 457; *Johnson* v. *Jordan*, id. 234; *New Ipswich Factory* v. *Batchelder*, 3 N. H. 190; *Hadden* v. *Shoutz*, 15 Ill. 581; *Fitch* v. *Johnson*, 104 id. 121.

The deed has the same effect as a condemnation, in which all past, present and future damages are assessed.   Mills on Eminent Domain, sec. 216; 1 Sutherland on Damages, 191; 3 id. 433; *Railroad Co.* v. *Henry*, 79 Ill. 290; *Railroad Co.* v. *McKinley*, 64 id. 338; *Railroad Co.* v. *Railroad Co.* 67 id. 143, and 96 id. 274.

The damages assessed will be held to include all such damage to the residue of the land as results from the reasonable use of the improvement, past, present and future.   *Railroad Co.* v. *Loeb*, 8 Bradw. 627; *Railroad Co.* v. *Carpenter*, 14 Ill. 191; *Jones* v. *Railroad Co.* 68 id. 380; *Railroad Co.* v. *Henry*, 79 id. 290; *Mix* v. *Railway Co.* 67 id. 319; *Railroad Co.* v. *Birbeck*, 70 id. 208; *Railroad Co.* v. *McKinley*, 64 id. 338.

As to the right to apply the road to additional uses connected with the business, etc., of the road, see *Railroad Co.* v. *Dryden*, 11 Kan. 186; *Telegraph Co.* v. *Rich*, 19 id. 517.

The conveyance operates as a complete release of all damages.   *Railroad Co.* v. *Cox*, 91 Ill. 500; *Conwell* v. *Railroad Co.* 81 id. 232.

The plaintiff in this case, inasmuch as the railroad was in operation when he purchased, can not recover, because the damages therefrom are presumed to have been considered by him.   *Railroad Co.* v. *Combs*, 10 Bush, 393; *Fowle* v. *Railroad Co.* 112 Mass. 334; *Town of Troy* v. *Railroad Co.* 3 Foster, 33; *Railroad Co.* v. *Maher*, 91 Ill. 312; *Railroad Co.* v. *Loeb*, 8 Bradw. 627; *City of Morrison* v. *Hinkson*, 87 Ill. 587; *Railway Co.* v. *McLaughlin*, 77 id. 279.

Mr. H. O. McDaid, for the appellee:

If this strip of land had been condemned, and the purposes were stated fully and completely in the petition, so as to apprise the owner of the number of tracks, and that petitioner wished to permit other railroads to operate its tracks, it would have acquired the right to operate its road carefully and prudently, forever, without liability for further damages; but unless such uses were clearly specified, any excess or difference would render it liable for the increased burden. *Railroad Co.* v. *Kidder*, 21 Ill. 131; *Railroad Co.* v. *Mitchell*, 47 id. 165; *Railroad Co.* v. *Birkett*, 62 id. 165.

Burcky's deed did not convey an interest in other lands. *Railroad Co.* v. *Cox*, 91 Ill. 505.

The effect of a grant of a right of way upon which to construct a railroad, does not give a right to use the property so as to injure another, and applies to a grantor, and in favor of a remote grantee, as well as to a stranger. The grantor by his deed never contemplated the permitting of the use of this right of way to other corporations, so as to throw increased burdens on the remainder of the tract. *Railroad Co.* v. *Cox*, 91 Ill. 505; *Tillotson* v. *Smith*, 32 N. H. 90; Washburn on Easements, (3d ed.) 343.

Anything that passes as an appurtenance must be *in esse*, and touch or depend upon the principal estate at the execution and delivery of the grant thereof. Washburn on Easements, 35, 51; *Swazey* v. *Brooks*, 34 Vt. 451; *Dunkle* v. *Railroad Co.* 4 Foster, 489; *Tabor* v. *Bradley*, 18 N. Y. 109.

Mr. Justice Sheldon delivered the opinion of the Court:

For the determination of this case we find that we need but to consider the one question of the effect of the deed of Burcky, made by him to the railroad company, although other questions have been urged before us.

The right of way upon which the railroad tracks in question are laid, was granted through lot 11, containing twenty

acres,' by Burcky, the then owner of the whole of the lot, for the purpose of constructing a railroad upon it, and to be held and enjoyed forever, for' all the uses and purposes in any way connected with the construction, preservation, occupation and enjoyment of the railroad. So precisely was the grant for this very purpose, and none other, that there was express provision that cesser of use for such purpose should make the land granted, revert to the grantor. The casting of smoke, cinders, ashes, sparks of fire, and the shaking of the soil, (the thing complained of) upon lot 11, outside of the one hundred feet right of way, was a necessary incident of the operation of the railroad. Being such, and inseparable from the running of trains upon the railroad, it was consented to, permitted and authorized by Burcky, for a compensation paid to him, by the deed which he made containing the grant. The deed did not, in express terms, give such consent, permission and authority, but it did so by necessary implication, in that the acts complained of were the necessary incident and accompaniment of that which was granted by the deed, — they resulted necessarily in the carrying into effect the main grant. It is abundantly settled that what the law expressly authorizes to be done can not be complained of as a public nuisance, and we do not perceive how any more can a private nuisance be predicated of that which the individual affected by it has, for value paid to him, consented to and authorized to be done.

As to the right to cast these substances complained of, upon plaintiff's land, being given by implication by the Burcky deed, we find it laid down by Blackstone, 2 Com. 36: "For when the law doth give anything to one, it giveth, impliedly, whatsoever is necessary for enjoying the same." And in Touchstone, 89: "When anything is granted, all the means to attain it, and all the fruits and effects of it, are granted also, and shall pass inclusive, together with the thing, by the grant of the thing itself, without the words *cum pertinentiis*, or any

such like words." In *Aiken* v. *Boardman,* 2 Metc. 463, we find the rule thus expressed: "A grant being made for a valuable consideration, it shall be presumed that the grantor intended to convey, and the grantee expected to receive, the full benefit of it, and therefore that the grantor not only conveyed the thing specifically described, but all other things, so far as it was in his power to pass them, which were necessary to the enjoyment of the thing granted." And see *Matter of City of Buffalo,* 68 N. Y. 172; *Johnson* v. *Jordan,* 2 Metc. 240.

We regard the deed from Burcky, for the public use of this railroad, as having the same effect upon the rights of the parties, with respect to lot 11, that a condemnation of the same land for such public use would have had,—the one being a voluntary conveyance made for a public use, and the other amounting to a statutory conveyance for such use. Had this right of way been acquired by condemnation, Burcky would have had made to him compensation for the value of the strip of land one hundred feet wide taken, and also an assessment of all the damages to the residue of lot 11 to result from the operation of the railroad. The rule is, that the appraisement of damages in a case of condemnation embraces all past, present and future damages which the improvement may thereafter reasonably produce. Mills on Eminent Domain, sec. 216, and cases cited; *Chicago and Alton R. R. Co.* v. *Springfield and Northwestern R. R. Co.* 67 Ill. 142; *Keithsburg and Eastern R. R. Co.* v. *Henry,* 79 id. 290.

It follows, that had the railroad company condemned this right of way as against Burcky, who was the owner of the whole tract, no recovery could have been had for the damages here sued for. They would have been included in the assessment of damages made on the condemnation, and whether in fact included or not, they would be conclusively presumed to have been included. The same result, we conceive, follows from Burcky's voluntary conveyance of the right of way. It is to be presumed that the contingent damages to the residue

of the lot which might arise from the prudent operation of the railroad, were taken into account in fixing the price. (See *Norris* v. *Vermont Central R. R. Co.* 28 Vt. 99, and *Conwell* v. *Railroad Co.* 81 Ill. 233.)    And herein would seem to be found sufficient answer to the position of appellee's counsel that the whole effect of Burcky's deed must be confined to the one hundred feet wide strip of land which it conveys by metes and bounds, and can have no extra-territorial operation, so as to give sanction to injuriously affecting any land of the grantor outside of the one hundred feet strip.    In a case of condemnation there certainly would have followed the right to thus injuriously affect the residue of a tract of land of which a portion had been taken, without liability for damage, and the result from Burcky's deed we hold to be the same.

The case is put by appellee's counsel that a simple conveyance of land in fee simple, without any reference to its use, would not authorize the injuriously affecting of any other land, and it then is asked if it can be claimed that when a less estate than a fee is granted, a greater effect results than if a fee is granted.    The fallacy appears obvious.    A mere conveyance of a tract of land might not give to the grantee the right to make any use of it which would injuriously affect any other land, for the law would attach the same condition as in general exists with respect to the holding of all land,— that the owner shall so use it as not to produce injury to another; but in the case before us there is the grant for this very use itself which will injuriously affect other land, and for no other use.    The deed permits and authorizes the injurious use for a consideration paid, thus making the difference between the cases supposed, in their application to this case, of the denial of an injurious use of land and the permitting of the injurious use.

With respect to the effect of a condemnation, which has been remarked upon, it is suggested by appellee's counsel

that in order to such effect the petition for condemnation should have stated its purposes fully and completely; that it should have described the number of the tracks, and that the company wished to permit other railroad companies to operate its tracks, etc. We do not understand that to have been necessary, or that more was required in this regard than that the petition should show that the land was needed for railroad purposes. But without respect to what may be necessary in a petition for condemnation, the language of this deed is broad enough to cover any manner of use for railroad purposes, and without limitation as to the company.

But it is said there are here increased uses of the right of way, in respect of which plaintiff may recover; that the deed of Burcky was made to the Chicago and Rock Island company, and that the present contention arises upon the result of the operation of the Chicago, Rock Island and Pacific Railway Company, a corporation formed by uniting several other railroad companies, and that it could not have been within the intention of the grant to permit divers other railroad companies, under the license of the Chicago and Rock Island company, to enter upon this right of way and assert rights of easement in this land. Permission to the use by other companies, and consolidations with other companies, are both authorized by statute. In dealing with the corporation, Burcky must be held to have had in contemplation the possible exercise of such corporate rights, and to have contracted with reference thereto. As before observed, the language of the grant was most broad and unlimited. It was to hold and enjoy the right of way "forever, for all uses and purposes, or in any way connected with the construction, preservation, occupation and enjoyment of said railroad." We think all uses of the railroad for railroad purposes, however much increased, and by whomever, which are authorized by law, must be held to come within the terms and intention of the grant. Burcky being the owner of the whole of

lot 11 at the time of the making of his deed, and his deed being duly recorded, it was notice of the grantee's rights to any subsequent purchaser of a portion of the lot; and such subsequent purchaser, or one acquiring a subsequent interest, would not, it is hardly necessary to remark, stand in any better situation with regard thereto than would Burcky himself had he continued to be the owner of the whole and were the plaintiff in the suit.

Several propositions of law were asked by both parties. It follows, from what has been said, that so far as they related to the question which has been considered, there was error in holding those asked by the plaintiff and in refusing those asked by the defendant.

The judgment of the Appellate Court will be reversed, and the cause remanded.

*Judgment reversed.*