The St. Louis and Belleville Electric Railway Co.

*v.*

Gustave VanHoorebeke *et al.*

*Opinion filed October 24, 1901.*

1. Specific performance—*agreement to convey right of way to railroad company may be specifically enforced.* An agreement to convey a right of way to a railroad company having lawful power to make the same stands upon the same footing as other contracts, and will be specifically enforced in a proper case.

2. Same—*what does not justify refusal to convey right of way.* Refusal to convey a right of way under a contract is not justified by the fact that the company, in constructing its road-bed, excavated within the limits of its right of way for dirt to elevate the road-bed, thereby causing water to stand, at times, in the excavations, since the damage so accruing is regarded as having been considered in making the contract.

3. Railroads—*a railroad company acquires same rights by contract as by condemnation.* A railroad company acquires the same rights and privileges under a contract relating to its right of way and the construction and operation of its road as in cases where such right of way is acquired by the exercise of eminent domain.

Appeal from the Circuit Court of St. Clair county; the Hon. M. W. Schaefer, Judge, presiding.

This is a bill for specific performance and to enjoin an action of ejectment, filed on January 20, 1900, by the appellant company against the appellees, Gustave Van-Hoorebeke and Given Campbell. The appellees answered the bill, denying the material allegations thereof. Upon a hearing of the cause, the bill was dismissed for want of equity by the trial court at the cost of appellant; and a temporary injunction theretofore granted was dissolved. The present appeal is prosecuted from said decree.

The bill in the case alleges that the complainant therein, the St. Louis and Belleville Electric Railway Company, is a railroad corporation organized under the general Railway act of the State of Illinois; that it was organized for the purpose of building and operating a double track electric railway between the cities of East

St. Louis and Belleville in St. Clair county, and has built, and is operating, said railway between said points; that defendants, the present appellees, before the construction of said railway, owned a tract of land east of and adjoining the village of Winstanley Park and south of the St. Clair county turnpike; that said land was in a direct line with the proposed railway; that, on September 18, 1897, the complainant and defendants entered into a written contract by the terms of which it was agreed as follows:

That, for and in consideration of the cash sum of one dollar in hand paid to said parties of the first part (appellees) by the said party of the second part (appellant), and for the further consideration of the benefits to be derived by the parties of the first part from the construction and running through their lands of a double track electric railway, and for the further consideration of the performance of the conditions thereinafter set forth, the parties of the first part thereby agreed to transfer to the party of the second part, its successors or assigns, by proper conveyance, the clear, unobstructed right of way across and through the lands of the party of the first part, described as a part of survey number seven hundred and seventy-seven (777) east of and adjoining Winstanley Park and south of the Belleville rock road so-called in St. Clair county; said right of way to be one hundred feet wide, fifty feet on each side of the center line of said railway, as now located and shown on the map or plat of said railway attached to said contract.

By the terms of said agreement, "it is expressly understood and agreed that this contract is made upon the express condition that the said party of the second part, its successors or assigns, shall, within twelve months from the date hereof, completely grade for a double track electric railway on said right of way, and shall, on or before the first day of May, A. D. 1899, construct and operate continuously, regularly and daily a double track

electric railway on said right of way, and that said right
of way shall only be used for electric railway purposes
and none other." By the terms of the contract, "it is
further understood that no conveyance of said right of
way shall be made until said grade is finished, and the
electric railway aforesaid in daily operation over said
right of way, but the right to enter and grade and build
the same is granted the party of the second part, its
successors or assigns, and unless said grading is finished
within the time specified of twelve months aforesaid,
and said electric railway shall be completed and in daily
operation over said right of way on or before the first
day of May, 1899, possession shall be surrendered by said
electric railway company, or its successors or assigns, if
taken thereunder, to said Campbell and VanHoorebeke,
their heirs or assigns, and this instrument shall become
null and void; and if at any time said electric railway
company, its successors or assigns, shall fail or neglect
to continuously operate said electric railway over said
right of way, then their possession of said property shall
at once cease, and the same shall revert to said Camp-
bell and VanHoorebeke."

The bill alleges, that the appellant complied with all
the terms and conditions named in the agreement. The
bill further alleges, that the appellees have refused to
make appellant a deed of conveyance for said right of
way in accordance with said agreement, and have insti-
tuted an ejectment suit to eject appellant from the right
of way described in said agreement.

On May 15, 1899, the appellees addressed a letter to
appellant in which, after reciting a portion of said agree-
ment of September 18, 1897, it is said: "Now, inasmuch
as you have failed, on or before the first day of May,
1899, to construct and operate continuously, regularly
and daily a double track electric railway on said right
of way, we hereby declare said agreement of September
18, 1897, to be null and void, and hereby notify you to

vacate said right of way and surrender possession there-
of to the undersigned without delay." This letter was
received on the next day after it was written, to-wit,
May 16, 1899.

HAMILL & BORDERS, for appellant.

GIVEN CAMPBELL, and G. VANHOOREBEKE, for appel-
lees.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

This is a bill, filed by a railway company to enforce
the specific performance of a contract to convey a right
of way, one hundred feet wide, through a tract of land,
containing between seventy and eighty acres. The case
is considered upon the assumption as to the power of
the company, made by counsel on both sides, as herein-
after indicated.

Where a railroad company enters into a contract or
agreement for the conveyance of a right of way, which
it has the lawful power to make, such contract, when
made, stands on the same footing as other contracts, and,
in proper cases, a bill for its specific performance will
be sustained in equity. (19 Am. & Eng. Ency. of Law,
p. 856). Where such a corporation, having power under
the law to do so, enters into an ordinary contract with
the owner for the sale and purchase of land to be used
for a right of way, a court of equity can decree a specific
performance of such contract. (Pomeroy on Contracts,
—2d ed.—sec. 32; *Ross* v. *Chicago, Burlington and Quincy
Railroad Co.* 77 Ill. 127; *C. & S. W. R. R. Co.* v. *Swinney*,
38 Iowa, 182; *Boston and Maine Railroad Co.* v. *Babcock*,
3 Cush. 228).

The appellees oppose the specific performance of the
contract, made by them, upon two grounds: *First*, upon
the alleged ground, that the defendant did not finish the
grading of the road, and construct and operate the road,

within the times limited by the contract of September 18, 1897; *second*, upon the alleged ground, that the appellant so constructed the road, or so made use of that portion of the right of way lying outside of the railroad bed, as to injure and damage the balance of the tract of land belonging to appellees, out of which the right of way was taken.

*First*—It is claimed by the appellees, that the appellant did not finish the grade or grading of the road within twelve months from the date of the contract, that is to say, by September 18, 1898. It is also contended by the appellees, that appellant did not on or before the first day of May, 1899, construct and operate continuously, regularly and daily a double track electric railway on said right of way. It is not claimed that said right of way has been used for any other than electric railway purposes.

It is clear, under the authorities above referred to, and upon the assumption heretofore and hereinafter indicated, that, if the appellant has complied with the conditions of its contract, it is entitled to a specific performance of the same. We think, after a careful examination of the evidence, that the appellant has complied with the terms of its contract. The grading of the road for a double track electric railway was substantially, if not completely, finished within one year after September 18, 1897, that is to say, by September 18, 1898. Also, a double track electric railway was constructed on said right of way and operated continuously, regularly and daily by the first day of May, 1899. It is unnecessary for us to discuss or analyze all the testimony upon this subject. The witnesses upon the part of the appellant are John A. Day, president of the appellant railway company; James A. Tiernan, chief engineer for the railway company and a civil engineer by profession; and A. C. Thompson, superintendent of the railway company, who also superintended the construction of the power house

and line work of the road. These witnesses testify from actual knowledge, that the grading and construction and operation of the road were finished within the time specified in the contract. The only testimony on the other side is that of the appellees, VanHoorebeke and Campbell, who were not present at the construction of the road and knew nothing about its construction and operation until after the road was finished.

The appellees are lawyers by profession. The contract of September 18, 1897, was drawn by Mr. Campbell himself. Their testimony, so far as it is contradictory of the three witnesses for the appellant, merely relates to conversations claimed to have been had, in the course of negotiations between the parties after May 15, 1899, with one or more of the officers of the appellant company.

It is admitted by the appellees themselves in their brief filed in this case, that the road was finished and in operation on May 20, 1899. Appellees say in their brief: "From the evidence it is clear that there was no operation of this road 'continuously, regularly and daily, of a double track railway' as contemplated by the contract, until May 20, 1899, and after." We do not deem it necessary to discuss the question, whether time is made of the essence of the contract here in controversy or not. There is no express stipulation in the contract, which in terms makes time of the essence of the contract. If time is of its essence, it is only impliedly so, and because its terms indicate such to have been the real intention of the parties. (*Miller* v. *Rice*, 133 Ill. 315). The evidence shows clearly that, by the first day of May, 1899, appellant had expended in the construction of this road, including the right of way over the land of appellees, the sum of about $400,000.00. The evidence of one of the appellees shows that, if there was any failure on the part of appellant to complete the construction and operation of the road by the first day of May, 1899, such failure was known to appellees on that date. Mr. Campbell says in his testimony:

"Somebody told me about the first of May, 1899, that they had thrown up a high embankment over my land and the cars were not running." Notwithstanding this knowledge, appellees waited until the 15th day of May before making any objection or complaint on account of the supposed default of the appellant. Upon that day, or the next day, they gave notice, declaring the agreement of September 18, 1897, to be null and void, and notifying appellant to vacate the right of way and surrender the possession to them.

It will be observed that the notice, given by the appellees on May 15, or May 16, 1899, does not call upon the appellant to finish the road or its construction or operation within any fixed time, whether reasonable or not. It, in substance, declares an absolute forfeiture of the contract, notwithstanding the admission by the appellees themselves that the road was completed, and in full operation, by the 20th day of May, 1899.

A court of equity abhors forfeiture. In *Voris* v. *Renshaw*, 49 Ill. 425, we said (p. 433): "The law does not favor forfeitures, and their prevention is within the protecting care of equity, whenever wrong or injustice will result from their enforcement; and to prevent their enforcement affords a large share of equity jurisdiction. * * * Inasmuch as equity does not favor forfeitures, but refuses to enforce them, unless it be to promote justice, and to prevent the perpetration of injustice and wrong, a clear case, appealing to the principles of justice, must be made out before a forfeiture will be enforced in that tribunal."

While it may be true that the formal opening of the road did not take place until May 20, 1899, the evidence shows that the grading was completed within the year specified in the contract, and that the road was operated, certainly as early as May 1, 1899, and before that time, by the running of one or more construction cars upon the track, which construction cars also carried passengers. Appellees permitted appellant to take possession of the

ground, which they agreed to convey to it for a right of way, and to spend an immense amount of money in grading the road, in laying rails, in building a power house, in erecting poles necessary to hold the wires used in the construction of an electric railway, in stringing the wires, and in otherwise perfecting the construction of the road. They permitted appellant to do this for fifteen days after they knew of what they claim to have been a default on the part of appellant. Under these circumstances, it certainly would be a great wrong and injustice to the appellant to enforce a forfeiture of this contract.

*Second*—The second ground, upon which the appellees refuse to comply with the contract to convey the right of way, is that appellant has injured the balance of their property by the way, in which the road has been constructed. The evidence shows, that the land, belonging to appellees, was low and subject at times to overflow. There was a lake near it, the waters of which sometimes backed up upon the land. In order to construct a road-bed across the land, it was necessary to raise the road-bed above the level of the land on either side of it. In other words, the grading of the road was necessarily from two to four feet above the surface of the ground. The character of the ground was well known to the appellees, who were the owners of it, and it must have also been known to them, that the construction of the road-bed in the manner thus indicated was made necessary by the character of the land itself.

In order to get earth or dirt for the construction of the road-bed, appellant was obliged to make excavations or dig ditches alongside of the road-bed. These ditches, when the water backs up upon the land, are filled with water. Appellees complain that, on account of these ditches, and on account of the elevation of the road-bed above the surface of the ground, it is impossible for them to cross the right of way, agreed to be conveyed to appellant, from one part of their land to another. As we

understand the evidence, no fault is found with the construction of the road itself.  The complaint is, that the ditches were dug, and that they are filled at times with water.  It is to be observed, however, that these ditches are not dug upon the land of appellees, but within the one hundred feet, constituting the right of way, which appellees agreed to convey to appellant.  The elevation of the road-bed, and the digging of the ditches made necessary in order to get earth for the construction of the road-bed, were acts performed by appellant upon its own ground, or the ground for which it held a contract of purchase.  Appellees furthermore claim that their land is so located as to be easily made into a subdivision, consisting of lots, blocks and streets.  The evidence shows that the tract of land, from which the right of way is taken, has been under cultivation as farm land, and that fifteen acres of it have been used as a pasture.  There is no proof whatever that any subdivision was ever made of the land, or that it was ever platted into lots or blocks, or streets, or alleys.  If the appellees desired to reserve the right to build crossings across the right of way, and across the road-bed of the appellant, they should have embodied such a provision in the contract.  There is, however, no such provision in the contract.

Appellees complain that, north of the right of way agreed to be conveyed to the appellant, there is a strip of land belonging to them only sixty feet wide, and that this strip is practically made useless to them by the construction of the road.  It appears from the evidence, however, that a map or plat of the railway was attached to the contract itself, which showed that a narrow strip of sixty feet would remain north of the road-bed.  Appellees were fully advised of this fact, therefore, before entering into the contract.

Appellees seem to regard their contract as one, which provides for the laying of tracks by a street railroad company in a street where access can be had to the cars

at every crossing.  But, here, there was no street, and there was an agreement for an absolute conveyance to the appellant of a clear, unobstructed right of way, one hundred feet wide, across the land of the appellees.  Under the statute, in pursuance of whose provisions the appellant company claims to have been organized, and whose organization thereunder is not denied by appellees, appellant would have the right to fence its right of way. The matter of crossing the right of way and of crossing the road-bed is a subject for future consideration.

We are of the opinion, that the elevation of the road-bed above the surface of the ground in the manner above stated, and the settling of water in the places, where appellant has made excavations for dirt to construct its road-bed, are not circumstances, which justify the appellees in refusing to comply with their contract.  Such damage, as may accrue to the land of appellees from these circumstances, must be regarded as having been taken into consideration when the contract to convey was made.  They merely create a difficulty of access from one part of the land to another.  (*Chicago Terminal Railroad Co.* v. *Bugbee*, 184 Ill. 353).

Where a railroad company obtains a right of way by purchase from the land owner, having power under the constitution and law to do so, all the incidents attach to such right as are acquired by eminent domain when the right of way is obtained by condemnation, it being conceded or established that such company can lawfully exercise the power of eminent domain.  In other words, a railroad company acquires the same rights and privileges under a private grant as to the construction and operation of its road, as under a right of way acquired by condemnation, where it has the power, under the law, to receive by grant and to acquire by condemnation.  Had this right of way been lawfully acquired by condemnation, appellees would have received compensation for the value of the strip of land, and also an assessment of all

damages to the residue of their tract to result from the construction and operation of the road. "The rule is, that the appraisement of damages in a case of condemnation embraces all past, present and future damages, which the improvement may thereafter reasonably produce." (*Chicago, Rock Island and Pacific Railway Co.* v. *Smith,* 111 Ill. 363). Here, the strip of land is, by the terms of the contract, to be conveyed for the purpose of a railroad right of way, and for the purpose of constructing and operating thereon a double track electric railway. Hence, the contract is to be construed, under the assumption hereinafter specified, as permitting and authorizing the use of which the appellees complain. As was said in *Chicago, Rock Island and Pacific Railway Co.* v. *Smith, supra:* "A mere conveyance of a tract of land might not give to the grantee the right to make any use of it, which would injuriously affect any other land, for the law would attach the same condition as in general exists with respect to the holding of all land,—that the owner shall so use it as not to produce injury to another; but, in the case before us, there is the grant for this very use itself which will injuriously affect other land, and for no other use."

In *Conwell* v. *Springfield and Northwestern Railroad Co.* 81 Ill. 232, it was held that, where a party executes a contract with a railway company, agreeing to release and convey a right of way for its road over any lands owned by him, as soon as the road is located, he will not be entitled to any damages by the construction of the road over any of his lands. The doctrine is thus stated by the Appellate Court of this State in *Illinois Central Railroad Co.* v. *Anderson,* 73 Ill. App. 621: "Cases between a railroad company and a grantor or condemnee fall in the same class. In such cases, the consideration for the grant or the damages assessed on condemnation include, once for all, the full compensation to be paid for any lawful use that fairly falls within the terms of the grant or the specifications of the condemnation."

It is true that, in the present case, the appellees did not receive, as consideration for the contract, an amount of money equal to the value of the strip of land to be conveyed. The consideration is expressed to be one dollar in hand paid, and the benefits to be derived by appellees from the construction and running through their lands of a double track electric railway, and for the further consideration of the performance of the conditions already mentioned. The benefits, here referred to, are the general benefits to result from the construction of the road. Wherever a special benefit is to be derived, as from the construction of a depot at a particular place, or from the location of a crossing over the road-bed at a particular point, it should be specified in the contract itself; but this was not done in the present case.

Where a right of way is purchased by a railroad company, the same duty as to the construction of its road and the building of necessary culverts, embankments, fences, etc., rests upon the company, as would have existed if the land had been taken under the right of eminent domain. (*Hortsman* v. *Covington, etc. Railroad Co.* 18 B. Mon. 218; *Smith* v. *New York, etc. Railroad Co.* 63 N. Y. 58).

Upon the whole, after a careful consideration of this record, we are of the opinion that the appellant was entitled to a decree, specifically enforcing the contract made with it by the appellees, and that the circuit court erred in dismissing the bill. Nothing herein contained, however, is intended to conflict with the doctrine of the following cases: *Harvey* v. *Aurora and Geneva Railway Co.* 174 Ill. 295; *Dewey* v. *Chicago and Milwaukee Electric Railway Co.* 184 id. 426; *Aurora and Geneva Railway Co.* v. *Harvey*, 178 id. 477. In this case, counsel on both sides assume that this electric railway company has power to receive a donation or conveyance of a right of way, and to condemn land for such right of way. We pass no opinion upon this subject, as it is not a contested question; but have considered the case as presented by counsel.

When a disputed question arises as to the existence of such power, we do not intend to be cut off from considering it by anything· here said. We merely hold that, assuming such power to exist because counsel on both sides seem to concede it in this case, we do not think that appellant has so failed to perform its contract, or has performed it in such an improper manner, as to justify appellees in refusing to execute a deed to it.

Accordingly, the decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*