(No. 3027—■■■■■■■■)

CASPER SIEKMANN, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 25, 1938.*

TURNER, HOLDER & ACKERMAN, for claimant.

OTTO KERNER, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimant is the owner of a small triangular tract of land situated at the intersection of S. B. I. Routes 12 and 157 at French Village in St. Clair County, said premises being improved by a one-story frame dwelling house with tar-paper roof and sides, and by a filling station.

The original Route 157 extends in a northerly and southerly direction a short distance east of claimant's property. S. B. I. Route 12 extends in an easterly and westerly direction just south of claimant's premises, and formerly intersected said S. B. I. Route 157 at grade. Some time prior to February 4th, 1936, the Department of Public Works and

Buildings, Division of Highways, decided upon a grade separation, and plans and specifications were prepared for the elevation of S. B. I. Route 157 so that it would cross said Route 12 and several railroad tracks immediately adjoining said Route 12 on the south, at an elevation of about twenty (20) feet above the level of the ground on which claimant's property was located. Such elevated roadway was constructed a short distance west of the original S. B. I. Route 157 and adjoins the premises of the claimant on the west; in fact, a portion of the west side of claimant's premises were taken for right-of-way purposes for the construction of such elevated roadway.

There are some bluffs to the north and east of claimant's property, and prior to the construction of such elevated roadway, the surface drainage from the bluffs was over claimant's property to the west. As the result of the construction of such elevated roadway along the west side of claimant's property, such property was left in a pocket.

On July 18th, 1936 a very unusual rainstorm occurred, something in the nature of a cloudburst, which lasted for about thirty minutes. The water from the bluffs flowed onto claimant's property in large quantities, and on account of the construction of the aforementioned elevated roadway, it did not flow off as usual, but accumulated to the depth of ten or twelve inches on claimant's property. When the water subsided a large amount of mud and silt was left on claimant's premises, whereby he claims that his property has been damaged to the extent of $335.00.

Prior to the construction of such elevated roadway, claimant had a tile drain running in a southwesterly direction from his property under S. B. I. Route 12, but in the course of the construction of such elevated roadway, said tile drain was broken by the continual passing thereover of the heavy trucks of the several contractors and the public, so that it was not operating at the time of the aforementioned rainstorm.

On or about February 4th, 1936 claimant and his wife, by quit-claim deed, for the consideration of $1,748.00, conveyed to the County of St. Clair, for public road purposes, a tract of land off of the west side of the premises then owned by him. After the description of the real estate conveyed, such deed contained the following provision: ''All the above

being situated in the County of St. Clair, in the State of Illinois, hereby releasing all claims to damages to land not taken, owned by the grantors, by reason of the construction and maintenance of said public road.'' The work of construction was commenced in March, 1936, and continued during practically all of such year.

The plans and specifications for the construction of such elevated roadway were examined by claimant before he executed the deed in question. He states that such plans contained no provision for the construction of a tile drain; and admits that he forgot about that matter when he made the deed. He states that after the work of construction commenced, but before the aforementioned rainstorm, he complained to the representatives of the respondent in charge of the work, about the absence of a tile drain, and was assured that the matter of drainage would be taken care of when the work was completed; also, that a tile drain was constructed after the heavy rain of July 19th, and that he has had no difficulty with surface water since that time.

The complaint herein is based upon the negligence of the servants and employees of the respondent in the construction of the elevated roadway in question, but claimant afterwards shifted his position, and now bases his right of recovery on Article 2, Section 13 of the Constitution.

The Attorney General contends that the construction of the elevated roadway in question was a governmental function, and that the respondent is not liable for the negligence of its servants and agents in connection therewith; also, that the claimant is barred by the provisions of his aforementioned deed and release from the recovery of any damages to property not taken.

In reply to such contentions, claimant states:

"It is our contention that the compensation as paid did not include any damages that arose subsequently out of the construction of this public improvement."

This court has held in numerous cases that in the construction of its hard-surfaced highways, the State is exercising a governmental function, and that in the exercise of such functions, the State is not liable for the acts of its servants and agents. However, where private property is taken for public use without just compensation, in violation of Section 13, Article 2 of the Constitution, another question is pre-

sented, and notwithstanding the position taken by claimant in his complaint, we will consider his claim in the light of the aforementioned constitutional provision.

It is apparent that claimant's right to an award depends upon the legal effect of the deed and release in evidence. It is well settled in this State that where there is a deed of conveyance, the legal effect of such deed is the same as a judgment in condemnation. The consideration for the deed constitutes a release of all damages, including damages to property not conveyed, which results from the proper construction of the road in question. *C. R. I. & P. Ry. Co.* vs. *Smith,* 111 Ill. 363; *Atterbury* vs. *C. I. & St. L. Ry. Co.,* 134 Ill. App. 330; *Watkins* vs. *State,* 6 C. C. R. 172; *Lampp* vs. *State,* 6 C. C. R. 342; *Baber* vs. *State,* No. 2221, decided December, 1935.

In Lewis on Eminent Domain, Second Edition, page 705, Section 294, the rule with reference to a release is set forth as follows:

"A release of damages has the same effect as the assessment and payment of damages under the statute."

As to the effect of a judgment in condemnation, our Supreme Court in the case of *C. R. I. & P. Ry. Co.* vs. *Smith, supra,* on page 371, in a case similar to the case at bar, said:

"The rule is, that the appraisement of damages in a case of condemnation embraces all past, present and future damages which the improvement may thereafter reasonably produce."

The rule there laid down is in accordance with the previous, as well as many subsequent decisions of such court.

In the case of *C. & A. R. R. Co.* vs. *J. L. & A. Ry. Co.,* 105 Ill. 388, the court, on page 394, said:

"Since the decision in the case of *Jacksonville and Savanna R. R. Co.* vs. *Kidder,* 21 Ill. 131, the practice has always been, in condemnation cases, to admit in evidence the plans of the work proposed to be done or the land taken, otherwise it could not be so well known how the projected improvement would affect the residue of the property. It is practicable, of course, to so construct a public improvement as to make it of greater or less damage to the land over which it passes, and the extent of such injury cannot be justly estimated unless the character of the work to be done shall be first ascertained from plans and specifications that shall be thereafter adhered to by the corporation condemning the land to its use."

 *       *       *       *       *       *       *       *       *       *

"Any marked departure from the plans, as shown in the profile submitted, or from the stipulation in evidence, as to the character of the work to be done, would subject the corporation making the condemnation to an action for damages, in favor of the land owner."

In the case of *C. P. & St. L. Ry. Co.* vs. *Brinkman,* 47 Ill. App. 287, the court, on page 291, said:

"Therefore we hold if a road is constructed in accordance with the profile offered in evidence on condemnation proceedings, and no change is made in the plans and profiles so offered, then no recovery can be had in an action on the case by reason of a mistake of the jury in determining the amount of damage, or by reason of a failure to allow a sufficient sum as damage to contiguous lands or a compensation for lands taken, nor by reason of a wrong description of the profile where it is open alike to be described by witnesses offered by the railroad company or by the land owner; and all damages consequent on the construction of the road in accordance with the implied agreement made by the company that it would be constructed according to the profile, when it is so constructed, are by the condemnation proceedings res judicata."

The claimant examined the plans and specifications before he executed the deed and release, and consequently, at the time of such execution, he was in possession of all of the facts with reference to the location of the roadway in question, the height of the elevation, the extent of the fill, as well as the fact that such plans made no provision for surface drainage from claimant's property. Claimant had owned such property for a considerable period of time and was familiar with the lay of the land and the direction in which the surface waters naturally flowed. He must have known therefore that one of the principal items of damage to the property not taken would be the damage resulting from the obstruction to the flow of the surface waters in their natural course. Knowing such facts, and having executed his deed and release with the full knowledge thereof, he is barred from recovering any damages resulting from the construction of the roadway in accordance with such plans and specifications.

The deed and release must be considered as having been based upon the construction of the improvement in accordance with the plans and specifications. If the improvement in question was constructed in substantial accordance with the plans and specifications, claimant is barred from the recovery of any further damages, for the reason that all damages resulting from the construction of the improvement in accordance with the plans and specifications must be considered as having been within the contemplation of the parties at the time of the execution of the deed and release.

It is true that a tile drain which had previously extended from claimant's property across Route 12 had been broken

by the continual passage thereover of the trucks owned by the several independent contractors who were working on the construction of the improvement, and by the public generally, but the State cannot be held responsible for the actions of any independent contractor. If any liability resulted therefrom, such liability is on the part of the contractor causing the damage and not upon the State.

There is nothing in the record which indicates that there was any substantial departure from the original plans, and under the facts and the law as above set forth, claimant is barred by his aforementioned deed and release, from any further recovery for the damages set forth in the complaint, and award must therefore be denied.