(No. 4782-)

GUSTAV ENGELKE AND LEOLA ENGELKE, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 8, 1962.*

ELDON M. DURR AND RALPH T. SMITH, Attorneys for Claimants.

WILLIAM G. CLARK, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

PERLIN, J.

Claimants seek to recover for damages allegedly resulting from the failure of the State to keep unobstructed

an underpass or culvert, which runs under Highway No. 66 and bisects claimant's property. Claimants allege that it was the duty of the State of Illinois to keep the culvert clear of silt and water, and that respondent's neglect of this duty gave rise to damages, because claimants' seventy head of cattle could not cross the highway to use the pasture land on the other side, and that partial closure of the underpass caused water to stand on such pasturage.

Claimants are owners of a dairy farm, which consists of 180.2 acres west of U. S. Route No. 66, and 34 acres east of Route No. 66. Most of the 34 acres east of the roadway were devoted to pasturing cattle, and access to this area required use of the culvert in question.

In about 1953 negotiations were undertaken between claimants and respondent to acquire access rights and some 12.17 acres of this farm. On April 2, 1955, documents were executed with the State, whereby claimants dedicated the land and access rights to the State for a consideration of approximately $28,000.00.

During the negotiations, claimants allege the State agreed to construct a culvert, which would enable claimants' cattle to pass under the road. A letter from the Department of Public Works and Buildings, Division of Highways, dated April 6, 1955, signed by the District Engineer, refers to the proposed use of the culvert as a cattle pass, and states an intention to maintain the waterway channel in such a manner that erosion or ponding at the ends of the culvert will not be excessive. The State constructed the new cattle pass or culvert sometime in 1955, and evidence shows that this underpass was cleaned out by respondent once after the construction of the highway.

Claimants allege that, after the completion of the construction, the cows could not pass through to the pasture for the reason that silt and water accumulated to such a depth that the cattle could not wade through. Also, the culvert did not provide a proper drainage, and, as a result, the water from the west side of the highway ran off onto the claimants' farm, and stood in an area of one-half to one acre. Claimants contend that their entire pasture land on the east side of the highway was rendered useless, because the cows could not get from the west side through the underpass to the pasture, and that there was no alternative method of crossing the road. Because of this, they had to buy tons of hay to feed the cattle, and were required to hire extra help. Claimants also claim that three trees were removed by respondent to provide entrance to the highway from the farm, but that such entrance way was never built. Respondent alleges said tree removal was done with claimants' permission, so that better access to the property would result.

The principal issue herein presented is whether or not respondent's payment of $27,930.00 to claimants for the land in question relieves respondent of any liability for subsequent damages.

Respondent contends that it did not assume responsibility of guaranteeing the continuous passage of claimants' cattle. Respondent further claims that the 12.17 acres of claimant's land, which was dedicated for the freeway, including access rights, was valued at $810.00 per acre or $9,857.70, and that the balance of the $27,930.00 was for consequential damages to the remainder.

It is noted that the Deed of Dedication herein makes no reference to providing or maintaining an underpass by respondent for the benefit of claimants. The Deed provides in part as follows:

". . .And the Grantors further, as a part of this dedication, on behalf of himself, his heirs, executors, administrators, and assigns, does hereby release, quit-claim and extinguish any and all rights or easements of access and crossing under which the tract of land herein conveyed and dedicated might otherwise be servient to abutting lands of the grantors. . ."

The letters of the Department of Public Works and Buildings, introduced by claimants, are dated subsequent to the date of the Deed of Dedication, and cannot be deemed a part thereof.

A deed, which is unambiguous, and which has a settled meaning in law, cannot be changed or added to by parol evidence. *Morton* vs. *Babb*, 251 Ill. 488.

In *Cole, Et Al*, vs. *State of Illinois*, 23 C.C.R. 74, this Court, in denying the claim therein, stated that "a decree in condemnation includes damages both to lands taken and lands not taken, and includes all damages, past, present and future." The Court, citing the case of *C., R.I. & P. Ry. Co.* vs. *Smith*, 111 Ill. 363, states that ". . . it would appear that a deed of dedication is all inclusive, and of the same effect as a condemnation proceeding." It must be concluded, therefore, that the payment for the deed herein includes past, present and future damages.

Claimants' complaint for damages resulting from the removal by respondent of three trees was neither clear nor proved, a fact conceded by claimants' counsel.

An award is, therefore, denied.