THE CHICAGO AND ALTON RAILROAD COMPANY *et al.*

*v.*

THE SPRINGFIELD AND NORTHWESTERN RAILROAD COMPANY.

1. EVIDENCE—*opinion of witnesses.* It is competent for experts, such as engineers, to give their opinions in respect to matters which may form the proper ingredients of a verdict, but it is not competent to ask the opinion of witnesses in such a way as to cover the very question to be found by the jury. The admission of such testimony is nothing more nor less than permitting the witnesses to usurp the province of the jury.

2. SAME—*none but experts are competent to give opinion.* But, even in such cases where an opinion is admissible, it must be shown that the witness was competent to give the same.

3. SAME—*assessment of damages for right of way.* On the assessment of damages in a proceeding for the right of way by one railroad company through the right of way of another company, which made it necessary to cut through a heavy embankment twenty feet below the grade of the road of the defendant, and thus remove the support of the latter road for the longitudinal space of sixty feet, while the road of the latter was in operation, the plaintiff company, after proving, by one of its contractors, that he proposed to support defendant's track with timbers which he described, asked the witness, "If you put in the cut the work you propose to do and have described, what would be the damages to the defendant?" He answered, "There would be no damages." The defendant objected to the testimony: *Held,* that the evidence was improper, upon the ground that the question called for the mere opinion of the witness upon the assumption that the plaintiff would put in the supports for the defendant's track when in nowise obligated to do so, and also because it was an opinion covering the very question to be settled by the jury.

4. ASSESSMENT OF DAMAGES *for right of way—evidence.* In the same case the plaintiff asked the witness, "Do you *expect* to keep the work in repair?" The defendant objected to the question, but the court permitted the witness to answer, and he said, "I do:" *Held,* that this was manifestly wrong, as the contractor's expectations, when there was nothing to bind him to make the repairs, could not properly enter into the question of damages.

5. SAME—*opinion of witness on a question of law.* In the same case, the court, against the objection of the defendant, allowed the plaintiff to ask the witness, "Whose duty would it be to keep the crossing and bridge in repair after the work you have described is put in?" *Held,* that the question called for an opinion upon a mere question of law, and was improper.

6. SAME—*keeping road in repair a proper element of damage.* Where one railroad company acquires, by legal condemnation, the right to run its road through a high embankment of another, and on a grade twenty feet below the track of the other, it is under no legal obligation to erect or maintain a bridge to support the track of such other company, and therefore proof of what it would cost to build such bridge and keep the same in repair is proper in the assessment of damages. The defendant, in such a case, is entitled to have such sum for damages as will enable it to construct and keep in repair all such works as may be necessary to keep its track in a safe and secure condition, and also for all such incidental loss and inconvenience as may be a necessary result.

7. JUDGMENT OF CONDEMNATION—*effect of.* After land has been con-demned for the use of a railroad, the adjudication can no more be im-peached in any collateral proceeding, or by evidence, than the judgment of any other court of exclusive jurisdiction; and it will be presumed con-clusively, that the party whose land has been taken has received, by the judgment and award, not only just compensation for the land taken, but for all such incidental loss, inconvenience and damage as might reasonably be expected to result from the construction and use of the way or cross-ing, in a legal and proper manner, and the judgment will afford a com-plete justification to the party exercising the right so acquired.

APPEAL from the County Court of Menard county; the Hon. COLIN M. ROBINSON, Judge, presiding.

This was a proceeding instituted by the Springfield and Northwestern Railroad Company against the Chicago and Alton Railroad Company and the St. Louis, Jacksonville and Chi-cago Railroad Company, to acquire the right of way through the right of way of the defendant companies, the Chicago and Alton Railroad Company occupying and using the road of the latter company under a perpetual lease from the same. The facts of the case appear in the opinion of the court.

Mr. N. W. BRANSON, for the appellants.

Mr. LYMAN LACEY, and Mr. S. P. SHOPE, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This is an appeal from the judgment of the county court of Menard county, in a proceeding by appellee to condemn a portion of the right of way of appellants, and ascertain the compensation and damages under the act of 1872. The line of appellee's road, as located, crosses the road and right of way of appellants in the town of Petersburg, in said county. At that point, appellants' railroad is constructed upon a high embankment, and was in operation. It was proposed to con-struct appellee's road at this crossing twenty feet below that of appellants, carrying the former through the embankment,

and thus removing the support of appellants' road for the longitudinal space of about sixty feet, while the road of the latter was in operation.    The case was tried by a jury, who assessed appellants' damages at five cents; and for which judgment of condemnation was rendered.

Upon the trial, appellee called as a witness one Kittle, who was the contractor of appellee, and lives in Iowa, and was asked by counsel, against the objections of appellants' counsel, to state how he proposed to cut through the embankment and support appellants' road.    His answer was, that he proposed to support appellants' track with timbers, describing them.    He was then asked this question by appellee's counsel:   "If you put in the cut the work you propose to do and have described, what would be the damages to the defendant?"  He answered: "There would be no damage."    The same question was put to six other witnesses offered by appellee, and the same answer returned, to which appellants' counsel excepted.

This evidence was improper, not only upon the ground that the question called for the mere opinion of the witness, upon the assumption that appellee would put in the work when in nowise obligated to do so, but upon the further ground that it was an opinion covering the very question which was to be settled by the jury, and so conclusive of it as to leave to the jury no other duty but that of recording the finding of appellee's witnesses.    It amounts to nothing more nor less than permitting the witnesses to usurp the province of the jury.    By this we do not mean to be understood as holding that it is incompetent for experts, such as engineers, to give their opinions in this case in respect to matters which may form the proper ingredients of a verdict.    But what we mean is, that, where the witness is an expert, and it is competent for him to give an opinion as to such ingredients of a verdict, still it is not competent to ask the opinion of witnesses in such way as to have it cover the very question to be found by the jury. In addition to the fact that none of the witnesses but one were shown to be competent to give an opinion at all, the

10—67TH ILL.

point of the objection is, that, by the form of the question, the witness was made to take the place of the jury. *Cleveland and Pittsburg R. R. Co.* v. *Ball*, 5 Ohio State R. 568.

The witness Kittle was asked by appellee's counsel this question: "Do you *expect* to keep the work in repair?" Appellants' counsel objected, but the court overruling the objection, he answered: "I do."

This was manifestly wrong. The contractor's expectations, when there was naught to bind him to make the repairs, could not properly enter into the question of damages.

But the next species of evidence was still worse. Another of appellee's witnesses, of the name of Cluff, was asked this question: "Whose duty would it be to keep the crossing and bridge over the opening in repair after the work you have described is put in?" This was likewise objected to by appellants' counsel, but the court overruled the objection, and the witness answered: "It would be the duty of the Springfield and Northwestern Railroad Company to keep the work in repair after it was finished." It is needless to say that here the witness was called upon to give, and gave, his opinion upon a mere question of law.

The answers here given, and all of which were improper, constituted the only elements of the verdict and judgment rendered.

On cross-examination of the last mentioned witness by appellants' counsel, he was asked to state what would be the cost of the support which appellee proposed to put in. The court told the witness he need not answer, as it would be only a guess.

Appellants' counsel then asked witness if he knew what it would cost, and witness answered that he did. The court then informed the witness that he was at liberty to answer the question or not, as he chose. The witness availed himself of the privilege and declined to answer. This inquiry was material and proper, and the court erred in excluding it.

The appellee's counsel insist in argument that, because appellant's road is a public highway, if appellee should assume to interfere with it by excavating through the embankment, the latter would be liable to keep it in repair and for all the consequences. They cite, in support of the proposition, the case of *Dygert* v. *Schenck*, 23 Wend. 446, and other cases of that class. These authorities do not apply. It is where a person *without authority* and illegally assumes to interfere with a public highway, that he is so liable. This question is fully considered in *Stephani et al.* v. *Brown*, 40 Ill. 428. Here, if the judgment in the condemnation proceedings is permitted to stand, the interference would be with authority and legal, and the judgment a complete justification. The 10th section of the act under which the proceedings were had so declares in express terms, (Sess. Laws, 1871–2, p. 404,) and it would be so as a legal effect of the judgment. After land is condemned for the use of a railway, the adjudication can no more be impeached by any collateral proceeding, or by evidence, than the judgment of any other court of exclusive jurisdiction. 1 Redf. on Railw. p. 254, sec. 17 ; *Hamilton* v. *Annapolis and Elk Ridge R.* 1 Md. Ch. R. 107.

It is the obvious and general rule, that final judgment of condemnation and payment of the award vest in the company exercising the right of eminent domain, the absolute right to use the land embraced in the judgment, for all legitimate purposes. *Dodge* v. *Burnes*, 6 Wisc. R. 514; *Burns* v. *Milw. and Miss. Railroad Co.* 9 ib. 450.

It follows, therefore, that the interference here proposed would not be illegal, and appellee would not be responsible for all the consequences. Hence the appellants, as common carriers of persons and property, would, after, as before, be subject to the duty of keeping their track, at the point in question, in a safe and secure condition; and the burden would not be shifted, by the judgment of condemnation, upon appellee. The reason is obvious. It would be a presumption of law that the appellants received by means of the judgment

and award of damages, not only just compensation for the land taken, but for all such incidental loss, inconvenience and damage which might reasonably be expected to result from the construction and use of this crossing in a legal and proper manner.    This is the true measure of just compensation contemplated by section 13 of the Bill of Rights, as respects natural persons, and the 14th section of article 11 of the constitution places corporations upon the same footing.

It is a general rule, that all tribunals having jurisdiction of any particular subject matter, are presumed to take into consideration all the elements legally constituting their judgments. Hence, all incidental loss and damage will be barred by the appraisal and judgment of condemnation, whether they were in fact included in the estimate or not.    1 Redf. on Railw. p. 287, sec. 74.

If, therefore, appellants would still be subject, after the appraisal and judgment of condemnation, to the duty of keeping this portion of their track in a safe and secure condition, and we have seen that they would be, and the appraisal and judgment are presumed to include all incidental loss, inconvenience and damage which might be reasonably expected to result from appellee's legitimate use of the crossing, does it not follow that no award can properly provide for a just compensation which does not include all such incidental loss, inconvenience and damage?

In this view, the amount of compensation should not be based or be made upon the assumption that appellee will construct a sufficient bridge and support, and keep the same in repair, because neither appellee nor its contractor is legally bound to do any such things, and their *expectations* in that behalf form no proper ingredient of the estimate under the circumstances of this case.

Appellants are entitled to such a sum for damages, to be paid by appellee in money, as will enable appellants to construct and keep in repair all such works as may be necessary to keep their track in a safe and secure condition.    Nothing

short of this can amount to the "just compensation" provided by law. They are also entitled to damages for all such incidental loss and inconvenience as may be a necessary result.

The judgment of the court below is reversed, and the cause will be remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*