JOHN C. HELLYER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 19, 1900.*

1. CRIMINAL LAW—*testimony of accused should be treated the same as any other testimony.* While the jury may rightfully consider the interest of the accused in the result of the case as affecting his credibility as a witness in his own behalf, yet the law does not authorize the court to put him in an inferior class from all other witnesses, by instructing the jury that they are not bound to treat his testimony the same as the testimony of other witnesses.

2. SAME—*it is the province of the jury to determine the weight of the evidence.* It is the province of the jury to determine the weight of the evidence, and to determine what, if any, admissions have been made by the accused, and the effect thereof.

3. SAME—*instructions should not assume facts which must be proved.* Instructions are erroneous which assume the existence of facts which the law requires to be proved beyond reasonable doubt.

4. EXPERT TESTIMONY—*matters not requiring special knowledge not the subject of expert testimony.* In a murder trial the question whether the wounds found upon the body of the deceased were such as could not have been inflicted by a railway train is not the subject of expert testimony by physicians who had testified they had seen the bodies of persons killed by moving trains, and who were thereupon permitted to answer hypothetical questions calling for their opinions, as experts, upon the subject.

WRIT OF ERROR to the Circuit Court of Fulton county; the Hon. JOHN A. GRAY, Judge, presiding.

H. W. MASTERS, for plaintiff in error.

B. M. CHIPERFIELD, State's Attorney, (F. M. GRANT, and C. E. CHIPERFIELD, of counsel,) for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

John C. Hellyer was indicted by the grand jury, at the January term, 1900, of Fulton county, for the murder of Cora Peters. The third count of the indictment having been quashed, a trial was had upon the first, second

and fourth counts thereof, which resulted in the convic-
tion of the defendant. The jury fixed the punishment at
imprisonment in the penitentiary for twenty-five years.
A motion for a new trial was overruled, judgment pro-
nounced upon the verdict, proper exceptions taken, and
a writ of error sued out from this court to reverse such
judgment.

The first count of the indictment charges that the
defendant made an assault upon the deceased with a dan-
gerous and deadly weapon, to-wit, a blunt instrument, a
further, better or more particular description of the said
weapon being to the grand jurors aforesaid unknown.
The second count charges that the defendant made an
assault upon the deceased in some manner, and by some
means, instruments and weapons to the grand jurors
aforesaid unknown; and the fourth count charges that
the defendant made an assault upon the deceased with
a dangerous and deadly weapon, a further description of
said weapon being to the grand jurors aforesaid unknown.

On the morning of the 23d day of December, 1899,
which was Saturday, John C. Hellyer was in the city of
Lewistown. In the forenoon of that day he wrote and
mailed a letter to Cora Peters, addressed to her at Ipava,
a village located about ten miles southwest of Lewis-
town, on the Chicago, Burlington and Quincy railroad,
which railroad also runs through Lewistown, inviting
her to meet him in Lewistown. In response to such let-
ter she went to Lewistown that afternoon by railroad
and was met at the depot by Hellyer. They repaired to
a wine-room located in the city, where they were together
the most of the time until about ten o'clock in the even-
ing, when they were observed together in said city go-
ing south and west toward the Chicago, Burlington and
Quincy railroad tracks. On Monday morning December
25, 1899, the dead body of Cora Peters was found near
the south-west abutment under the south edge of the
trestlework which forms a part of the railroad bridge

which crosses Spoon river near Steam-Shovel Cut, a flag
station located on the west side of Spoon river, about
four and one-half miles south-west of Lewistown. The
banks of Spoon river at the point where crossed by the
railroad are lower than the adjoining land, and the river
is crossed by the railroad on a bridge with trestlework
on either side, the entire bridge, including trestles, being
about seven hundred feet in length. The body, when
found, was lying on the left side, parallel with the rail-
road, the head toward Lewistown. There were slight
bruises upon the back, the mouth was somewhat bruised
and swollen and there was a bruised condition over each
eye. The post mortem disclosed no other injuries except
a congested condition of the brain. The physicians who
held the autopsy agreed death resulted from the injury
over the right eye, which caused congestion of the brain.

The defendant, on the trial of the cause, was a witness
in his own behalf. He testified that he and Cora Peters
left Lewistown together on Saturday evening, December
23, at about ten o'clock, expecting to walk on the rail-
road to Steam-Shovel Cut, where Cora Peters intended
to flag the midnight train and return to Ipava, and he
to walk therefrom, about four and one-half miles in a
westerly direction, to his home; that on their way to
Steam-Shovel Cut, and as they were crossing the rail-
road bridge over Spoon river, they were overtaken by a
south-bound passenger train; that when the train over-
took them they were on the end of the ties on the south
side of the track and near the south-west end of the
bridge, Cora Peters being slightly in advance of him;
that he was struck by the train and thrown off and se-
verely injured; that he does not know what became of
Cora Peters, but presumes she was precipitated from the
bridge at the same time; that he went to his home and
from there to the home of one John Burgland; that on
the following Wednesday he heard Cora Peters was dead
and that the sheriff of Fulton county was looking for him;

that upon receiving such information he immediately wrote the sheriff informing him of his whereabouts and that he would be at his home that evening, and that the sheriff, in response to such letter, arrested him at his home the following evening.

There was no person other than the defendant who saw Cora Peters after she left Lewistown. No motive was shown why Hellyer should take her life. A passenger train passed over said bridge at about the time Hellyer claims they were overtaken thereon, and the injuries received by Cora Peters, as disclosed after death, could readily have been produced by her falling from the bridge and striking upon the ground or trestlework, the height of the bridge near the point where she was found being at least ten feet above the ground. The People relied entirely upon circumstantial evidence to secure a conviction. The verdict of the jury, in view of the evidence, would necessarily largely depend upon the weight which they gave to the testimony of the defendant. If they gave credence to his evidence they would be bound to acquit him. It was therefore very important to him that the jury be correctly instructed as to the law, and especially as to the manner in which they should treat his testimony.

The fifth instruction, given at the instance of the People, is as follows:

"The court further instructs you, that while the defendant is by law a competent witness in his own behalf in this case, yet his credibility and the weight to be given to his testimony are matters exclusively for the jury to pass upon; and while they should not disregard his testimony through mere caprice, yet the jury are not bound to believe him, nor are they bound to treat his testimony the same as the testimony of other witnesses, but they may take into consideration the fact that he is the defendant and his interest in the result of the case as such, and give his testimony such weight as, under all the facts

and circumstances in evidence in the case, they may think it is entitled to."

This instruction told the jury *they were not bound to treat the testimony of the defendant the same as the testimony of other witnesses,* which, under the rulings of this court, is not the law. While the jury, when the defendant testifies in his own behalf, may rightfully take into consideration his interest in the result of the suit as affecting his credibility, the law does not authorize the court to place him in a separate and inferior class from all other witnesses by telling the jury they are not bound to treat his testimony the same as the testimony of other witnesses. In the case of *Chambers* v. *People,* 105 Ill. 409, we had under consideration an instruction which informed the jury they were not bound to believe the evidence of the defendant in a criminal case and treat it the same as the evidence of other witnesses, although they might take into consideration the fact that he is the defendant and give his testimony such weight as, under all the circumstances, they think it entitled to. On page 414 we say: "It cannot * * * be true that the evidence given by the defendant charged with crime is not to be treated the same as the evidence of other witnesses." And again, on page 415: "The law contemplates, and a fair trial requires, that the jury shall enter upon the consideration of the evidence (which, of course, includes the credit to be given to the several witnesses,) with unbiased and inquiring, and not with biased or prejudicate, minds. This instruction violates that principle by a sort of first-blush condemnation of the evidence given by the plaintiff in error. * * * If they are not to treat it the same as the evidence of other witnesses, how are they to treat it? The inference of the jury would most probably be, that in legal presumption it is inferior, under all circumstances, to other evidence and of but little importance in ascertaining the truth, whereas it is for the jurors themselves to determine, under all the circumstances legitimately

before them, the relative importance and weight it shall have in each particular case. The question is one of fact, and not one of law." In the case of *Sullivan* v. *People*, 114 Ill. 24, we say, in discussing an instruction identical with this, which had been given by the court in that case (p. 27): "As will be observed, the fourth instruction, *supra*, informs the jury, in plain words, that they are under no obligation to treat the evidence of the defendants the same as the testimony of other witnesses. An instruction of this character was condemned in *Chambers* v. *People*, 105 Ill. 409, where it was held that the accused, as a witness, differs from other witnesses only in the fact that he is the defendant, charged and being tried for crime, which may be taken into consideration by the jury in passing on his credibility, but his testimony must be treated the same as that of any other witness." The instruction is in conflict with *Chambers* v. *People*, *supra*, and *Sullivan* v. *People*, *supra*, and, under the evidence in this case, constitutes reversible error.

The twenty-fourth instruction given by the court at the instance of the People is as follows:

"The jury are instructed that in the case now on trial it is admitted by the defendant, John Hellyer, that he and the deceased woman, Cora Peters, were together at a point near Steam-Shovel Cut, in this county, when it is said that the woman, Cora Peters, received the injury or wound which thereafter caused her death. The theory upon which this case has been presented to you on behalf of the People is, that the deceased, Cora Peters, came to her death as a result of a blow struck her by the defendant, which caused a congested condition of the brain, from which she died, and that the defendant is guilty of the murder of the woman, Cora Peters. On the other hand, the theory of the defense is, that the defendant, Hellyer, is not guilty, but that the injury or wound which the deceased woman received was caused by her being struck by a train of cars running on the Chicago, Burling-

ton and Quincy Railroad Company's railroad. If the jury believe, from all the evidence, beyond a reasonable doubt, that on or about the 24th day of December, 1899, at and within the county of Fulton and State of Illinois, the defendant struck or inflicted upon the person of the deceased, Cora Peters, wounds from which she thereafter died, and that the act of the defendant in inflicting the wound aforesaid, or the injury from which death resulted, was done unlawfully, willfully, feloniously and of his malice aforethought, without any excuse or justification therefor, as explained in these instructions, then, if the jury find the facts, as aforesaid, from all the evidence, beyond a reasonable doubt, you would be authorized to find the defendant guilty."

We think this instruction subject to just criticism in this: that it states John Hellyer admits he was present when Cora Peters received the injury which caused her death. By the plea of not guilty the defendant put in issue every material allegation of the indictment, and before the jury could rightfully find him guilty the People were bound to establish, by competent evidence, his guilt, beyond all reasonable doubt. It was the province of the jury to determine the weight of the evidence in the case, and what admissions, if any, had been made by Hellyer, and the effect thereof. Furthermore, the instruction says: "The theory of the defense is, that the defendant, Hellyer, is not guilty, but that the injury or wound which the deceased woman received was caused by her being struck by a train of cars." Here is an assumption that Cora Peters received a wound which caused her death,—a fact which must be established by the evidence beyond all reasonable doubt, and not assumed by the instructions; and the court had no right, by such instruction, to limit the defense by saying to the jury its theory was that the injury was caused by Cora Peters being struck by a train of cars, as the evidence tended to show such injury might have been received, not by her being struck by a train of

cars, but by striking upon the ground or trestlework after falling off from the bridge. The testimony of the defendant is to the effect that the last time he saw her she was still on the bridge. She may have been struck by the train and injured, or she may have, in her fright, in attempting to escape from the approaching train, stepped or fallen off the bridge and been injured. These were all questions to be passed upon by the jury upon a full and dispassionate consideration of all the evidence in the case. We think this instruction clearly bad, and that the same should not have been given to the jury.

The People, as a part of its case in chief, called a number of physicians who testified they had seen the bodies of persons who had been killed by being struck by moving trains, whereupon they were permitted, over the objection of the defendant, to answer the following question and other kindred questions: "I will ask you if a body of a deceased person, about thirty-six hours after death, presented no external evidence of any injury having been received by it other than a small black-and-blue spot, about three by three inches in size, on the back, near the waist, and a small bruise near the base of the left shoulder blade, about one inch in diameter, neither of which injuries broke the skin or injured or tore the clothing or dress of said person, and there was apparent another bruise upon and across the mouth, which had injured the mouth so it had bled and was inflamed and swollen, and another wound extending vertically over the right eye, above and below the same, about one and one-half inches in each direction, which last mentioned wound was about one inch in width and black and discolored along the entire length of said wound, and if, upon an autopsy being held upon said body and a careful investigation of the internal organs and tissues of the body, no internal injuries existed other than a concussion of the brain and a clot of blood under said wound, and if, upon careful examination, the bones and tissues of the body, internally

and externally, were found to be wholly uninjured and unaffected, other than as above stated,—in your professional opinion, based upon your experience, would it be possible for the death of said person to be inflicted or caused by a passenger train, consisting of an engine, tender and five cars, weighing in all about two hundred and fifty tons, running at the rate of thirty-five miles an hour, striking the body of said deceased person in the rear or back thereof, without producing other external and internal injuries than those above described?"

We are of the opinion this evidence was improperly admitted. It is negative in its character, anticipated the defense, and is not competent as opinion or expert testimony. The subject of the proposed injury was a matter of common observation, upon which the lay or uneducated mind is capable of forming a correct judgment. In regard to such matters experts are not permitted to state their conclusions. In questions of science their opinions are received, for in such questions scientific men have superior knowledge and generally think alike. Not so in matters of common knowledge. (*Milwaukee and St. Paul Railway Co.* v. *Kellogg*, 94 U. S. 469.) "Whenever the subject matter of inquiry is of such a character that it may be presumed to lie within the common experience of all men of common education moving in the ordinary walks of life, the rule is that the opinions of experts are inadmissible, as the jury are supposed in all such matters to be entirely competent to draw the necessary inferences from the facts testified of by the witnesses." (Rogers on Expert Testimony, sec. 8; *Ohio and Mississippi Railway Co.* v. *Webb*, 142 Ill. 404.) As a general rule, the opinions of witnesses are not to be received in evidence merely because such witnesses may have had some experience or greater opportunities of observation than others, unless such opinions relate to matters of skill and science. (*Robertson* v. *Stark*, 15 N. H. 109; *Marshall* v. *Columbian Ins. Co.* 7 Fost. (N. H.) 157; *Protection Ins. Co.* v. *Harmer*, 2 Ohio,

(Warden,) 452; *People* v. *Godine*, 1 Denio, 281; *Westlake* v. *St. Lawrence, etc. Ins. Co.* 14 Barb. 206; *Smith* v. *Gugerty*, 4 Barb. 614; *Folkes* v. *Chudd*, 3 Doug. 157; 1 Smith's Lead. Cas.—5th Am. ed.—630; *Daniels* v. *Mosher*, 2 Mich. 183.) An expert cannot be asked whether the time during which a railroad train stopped was sufficient to enable the passengers to get off, (*Keller* v. *Railroad Co.* 2 Abb. App. Dec. 480,) or whether it was prudent to blow a whistle at a particular time. (*Hill* v. *Railroad Co.* 55 Me. 438.) Nor can a person conversant with real estate be asked respecting the peculiar liability of unoccupied buildings to fire. (*Mulry* v. *Insurance Co.* 5 Gray, 541.) The opinions of witnesses should not be asked in such a way as to cover the very question to be found by a court or jury. (*Chicago and Alton Railroad Co.* v. *Springfield and Northwestern Railroad Co.* 67 Ill. 142.) Where the matter inquired about requires no special knowledge, and may be determined by a jury upon a sufficient description of the facts in regard to it, it is not proper to receive the testimony of experts. (*Hopkins* v. *Indianapolis and St. Louis Railroad Co.* 78 Ill. 32; *City of Chicago* v. *McGiven*, id. 347; *Pennsylvania Co.* v. *Conlan*, 101 id. 93.) The probable effect of taking all the stakes from one side of a car loaded with lumber, being a matter of the operation of natural laws within the observation of everybody, is not a matter for expert testimony. *Hughes* v. *Richter*, 161 Ill. 409.

It is unnecessary to consider the other questions discussed in the brief of plaintiff in error. For the errors pointed out there must be a reversal of the judgment.

The judgment of the court below is reversed and the cause remanded to that court for a new trial.

*Reversed and remanded.*