[No. 2117.]

STEVENS V. WALTON.

1. **Evidence—Value of Services.**

In an action to recover for services, plaintiff is a competent witness to testify to the value of his services and may be permitted to answer the direct question of what his services were worth.

2. **Evidence—Objections.**

Objections to the admission of evidence should be sufficiently specific to enable the court to rule upon them intelligently.

3. **Evidence—Skill of Workman—Competency of Witness.**

In an action for services as a photographer another photographer who worked with plaintiff was a competent witness to testify as to plaintiff's skill in his work.

4. **Evidence—Action for Services—Health of Plaintiff.**

In an action to recover for services a statement by a witness on direct examination that the person succeeding plaintiff was a stronger man and could work longer hours does not entitle defendant on cross-examination to question the witness as to the state of plaintiff's health when he entered defendant's employ.

5. **Evidence—Appellate Practice—Presumption.**

A ruling of the trial court excluding a circular offered in evidence will be presumed to have been correct when the abstract fails to advise the appellate court what the contents of the circular were.

6. **Partnership—Evidence.**

In an action to charge defendant as a member of a partnership a newspaper article based upon an interview with defendant in which it was stated that defendant was a member of such partnership, was admissible in evidence, although the exact words used by defendant in the interview were not given, where from the evidence of the author of the article and defendant the

jury would be justified in believing that the article was a substantially correct reproduction of the interview.

**7. Same.**

In an action to charge defendant as a member of a partnership, a newspaper article based upon an interview with defendant and stating that defendant and another had formed such partnership, a perusal of which led plaintiff to apply to the supposed partnership for employment, is admissible in evidence whether a correct reproduction of defendant's language or not, where it is shown that defendant saw the article and knew that it resulted from an interview with him, and made no effort to have it corrected.

**8. Instructions—Action for Wages.**

In an action for the value of services where there was no evidence that plaintiff entered the employ of defendant under an agreement whereby he was to receive no pay, an instruction to the effect that if he did enter the employ of defendant under such contract, then, unless the plaintiff proved a later contract with defendant whereby he was to receive pay, the jury must find for defendant, was properly refused.

*Appeal from the County Court of El Paso County.*

Mr. JOHN M. HARNAN and Mr. J. S. DANSER, for appellant.

Mr. H. McGARRY and Mr. L. H. ROUSE, for appellee.

THOMSON, J.

W. R. Walton brought suit against F. P. Stevens and W. E. McChristie to recover wages which he claimed they owed him for services rendered. The action was commenced before a justice of the peace, and there being no written pleadings, the nature and amount of the claim must be found in the evidence. From that it appears that the plaintiff charged the defendants, as partners, doing business under the name of The Nonpareil Portrait and Publishing Company, and that the services for which he claimed compensation, consisted in printing and toning certain pictures, printing and finishing standard views of

Colorado scenery, and doing general photo work. Summons was served on Stevens only; McChristie did not appear. The jury found for the plaintiff, and Stevens is here by appeal from the judgment entered on the verdict.

There was evidence to warrant the jury in finding that Stevens held himself out as a partner with McChristie, and there was some evidence that there was an actual partnership between the two men— notably a bond executed by Stevens to McChristie, at the time their business relations ceased, which recited a sale by McChristie of his interest in the business, stock and fixtures, to Stevens; the latter assuming all the obligations of the business. The evidence also supported the finding of the jury as to the amount which was due the plaintiff; and unless Stevens' case was prejudiced by error committed at the trial, or in the giving or refusing of instructions, the judgment below must be affirmed.

In the printed argument for the appellant, most of the assignments of error have been abandoned; and we shall notice those only upon which reliance is now specifically placed.

The plaintiff was asked what his services rendered for the defendants were worth. Stevens objected to the question as immaterial, incompetent and irrelevant. In support of his objection, he refers us to the case of *Republican Publishing Co. v. Miner*, 12 Colo. 77, in which it was held that the statement of a witness that his understanding of a publication alleged to be libelous, was that it charged the offense of an attempt to commit murder, was improperly admitted; and to the case of *R. R. Co. v. R. R. Co.*, 67 Ill. 142, which is equally irrelevant. A person is presumed to know the value of his own services, and is a competent witness to such value. The objection was very properly overruled.

H. J. Olmstead, a witness for the plaintiff, was interrogated as follows:

"Now, from what you know of photography at this time, and what you saw of Mr. Walton's work there, state to the jury what degree of skill he had as a workman in that occupation?"

The question was followed by this from Stevens: "Defendant objects as incompetent."

Objections should be sufficiently specific to enable a court to rule upon them intelligently. We think this one hardly meets the requirement. The court allowed the question to be answered; and, regardless of the sufficiency or insufficiency of the objection, we think the ruling was right. The witness had been engaged by the side of the plaintiff, in the same kind of work, and, from his testimony, would seem to have been quite familiar with its details, and a very good judge of its merit when done. His answer was: "As far as I can judge, I would say that Mr. Walton's work was very good."

We think he possessed the qualifications necessary to enable him to testify.

In his cross-examination of Olmstead, Stevens' counsel asked him this question:

"Now, what was the state of Mr. Walton's health when he entered the employ of the Nonpareil Portrait and Publishing Company, if you know?"

The court sustained an objection to the question on the ground that it was not proper cross-examination. For Stevens it is said that in the direct examination of the witness, the plaintiff's counsel brought out testimony concerning his health, and that, therefore, the cross-interrogatory was proper. While the witness was being directly examined, and while he was testifying concerning a Mr. Lombard, who had succeeded the plaintiff in his position with the Nonpareil Portrait and Publishing Company, he was

·questioned as follows, returning the annexed answers:

"Q. You may state whether he (Lombard) could do any better work than Mr. Walton?

"A. He could do a greater variety, but I don't think any better.

"Q. Could he do any more of it?

"A. He was a stronger man, and could work longer hours."

It is in this last answer that counsel find the evidence concerning the plaintiff's health, which they say entitled them to a response to the question. That simply because one man is physically stronger than another, there is something wrong with the latter's health, is a new proposition to us. In the present state of our knowledge, we are compelled to disagree with counsel, and to hold that the court was right in excluding the proposed testimony.

A printed circular of some kind, marked "Exhibit G," and offered in evidence by Stevens, was rejected by the court. Counsel say the ruling was error. We do not know what the paper contained. The following is all the abstract says about it: "Exhibit G. This is an advertising circular used by the Nonpareil Portrait and Publishing Company to advertise the business at both the main and branch offices."

Without further information on the subject than the foregoing imparts, we must presume that the court ruled correctly.

The court admitted, over Stevens' objection, an article published in the Colorado Springs Gazette prior to the plaintiff's employment by the Nonpareil Publishing Company, in which, among other things, it was stated that a partnership had been formed between McChristie and Stevens, and in which the nature of the business they proposed to carry on was described. It was a perusal of this article that led

the plaintiff to apply to the supposed partnership for employment. The objection to it was that it was hearsay. Mr. McKay, a reporter for the Gazette, and the author of the article in question, was examined for the plaintiff concerning it. He testified that it was the result of an interview he had with Stevens, and was based on information he received from Stevens; that while he did not use Stevens' exact words, and while he could not say that Stevens said a partnership had been formed, the contents of the article were in harmony with the statements Stevens made, and that in writing it, he followed the impressions Stevens' talk had produced on him. Mr. Stevens admitted the interview, saying he stated to Mr. McKay that a photographer told him there appeared to be a good field in that part of the country for a photocopying and enlarging business; intimated that he (Stevens), having a considerable reputation, would be a valuable man to represent him (the photographer); and made a proposition, but made no definite conditions on the subject of partnership. The court then asked the witness: "Is what you have stated what you told McKay?" The answer was: "As near as I can remember it is; I went into details that way, and I told him that finally the arrangements were consummated for business, and we should go into business in that way; I told McKay all that, but of course I did not expect for him to write all these details up, and he made a third of a column article out of it." Stevens was examined further by his counsel as follows:

"Q. Did you pay Mr. McKay anything for that? A. No, sir.

"Q. Did you see the article in the Gazette? A. Which?

"Q. The article in question? A. Yes, I saw it.

"Q. Did Mr. McKay represent facts as you

stated them to him? A. No, not exactly; I just looked at it as like almost all such newspaper items, the accuracy of which wasn't the chief value of the thing to our enterprise; it was just the fact that something was going to be done, and we wanted people to know that something was going to be done; I laughed about the article a good deal."

The fact of the interview is established by the testimony of both parties to it. Stevens said that the article did not state the facts exactly as he gave them. We would infer from his use of the word "exactly" in the connection in which it occurs, that he regarded the difference as slight. McKay testified that he did not reproduce Stevens' exact words, so that there does not appear to be any important disagreement between the witnesses. A jury would be justified by the evidence in believing that the article was a substantially correct reproduction of the interview.

But, after all, whether it was correct or not is immaterial. Stevens saw the publication when it appeared; he knew that it resulted from his interview with McKay; and if it reported his statements untruly, it was his duty, in order that the public might not be misled, to cause the proper corrections to be made. But he found no fault with the article; he wanted the people to know that something was going to be done, apparently regarding accuracy of statement as unimportant; and instead of attempting to correct false impressions which it might produce, he "laughed about the article a good deal." He was entirely willing that, true or false, it should be believed. He thus made himself responsible for the statements in the publication, and so held himself out to the world as a partner with McChristie. It would have been error to exclude the article.—See *Fletcher v. Pullen,* 70 Md. 205.

Stevens complains of the refusal of the court to give the following instruction:

"If the plaintiff entered the employ of the Nonpareil Portrait and Publishing Company under a contract whereby he was to receive no pay, then, unless the plaintiff has proved that there was a later contract between the plaintiff and the defendant, Stevens, as a partner, whereby the plaintiff was to receive pay, you must bring in a verdict in favor of the defendant Stevens."

There was no evidence that the plaintiff entered the employ of the Nonpareil Portrait and Publishing Company under a contract whereby he was to receive no pay. No witness testified that there was any such contract. That instruction, if given, would have misled the jury, and it was the duty of the court to refuse it.—*Fisk v. Electric Light Co.*, 3 Colo. App. 319.

We have now disposed of all the assignments of error to which our attention has been directed in the argument for Stevens. The court submitted the questions arising upon the facts by instructions which are unobjectionable, and the judgment entered on the verdict must be affirmed.　　　　　　*Affirmed.*