[No. 5468.]
[No. 3138 C. A.]

THE FORT COLLINS DEVELOPMENT RAILWAY COMPANY
v. FRANCE.

1. **Eminent Domain—Injury to Property—Damages—Grounds.**

The mere fact that plaintiff, near whose property a railroad viaduct crosses a street, uses the street more frequently than other people, and is more frequently inconvenienced by such viaduct, does not entitle him to damages against the railroad, but the damages must apply specially to plaintiff's property.—P. 515.

2. **Appellate Practice—Practice in Civil Actions—Evidence—Sufficiency of Objections—Exceptions.**

An objection to the admission of testimony, on the ground that it calls for the witness's opinion and usurps the province of the court or jury, should specifically state that the question calls for a fact not provable by opinion, in order to make an objection thereto available on appeal.—P. 517.

3. **Evidence—Opinion Evidence—Admissibility—Invading Province of Jury.**

In an action for damages to real property by the construction of a railroad, questions asked witnesses as to the value of the property or its rental value before the construction of the railroad, and its value afterwards, do not invade the province of the jury by calling for opinions as to the damages suffered.—P. 518.

4. **Practice in Civil Actions—Evidence—Objections—Sufficiency.**

In an action for damages to real property, an answer of a witness, stating his estimate of the amount of the depreciation of the property, while objectionable as stating the very matter in issue before the jury, was properly admitted over an objection that it was "incompetent, irrelevant, and immaterial, and that the witness had not shown special qualification."—P. 518.

5. **Appellate Practice—Harmless Error.**

In an action for damages to land by the construction of a railroad, a question asked a witness as to the depreciation in value of the property by reason of the construction of the railroad, although improper, was not prejudicial where the witness, in answer to other questions, stated the value with and without the railroad.—P. 520.

6. **Appellate Practice—Practice in Civil Actions—Opinion Evidence—Questions Preliminary to Admission of Evidence.**

Whether a witness is qualified to testify to a matter of opinion, is a preliminary question for the presiding judge, and his decision is conclusive unless clearly erroneous in matter of law.—P. 521.

7. **Pleading—Amendment—Discretion of Court.**

After the jury is impaneled, it is within the discretion of the trial court to allow an amendment to the complaint to correct a mistake.—P. 522.

8. **Appellate Practice — Pleading — Amendment — No Prejudice Shown.**

Although the trial court may have erred in allowing an amendment to a pleading after the jury was impaneled, in the

33

absence of prejudice to opposite party appearing or being claimed, such error will be disregarded on appeal.—P. 522.

**9.   Evidence—Value of Property—Assessment Roll.**

In an action for damages to real property by the construction of a railroad, it was not error to refuse the admission of an assessment roll showing the valuation of the property for assessment purposes, made by the county assessor, as evidence of the value of the property.—P. 522.

*Appeal from the County Court of Larimer County. Hon. J. Mack Mills, Judge.*

Action by J. H. France against The Fort Collins Development Railway Company. From a judgment for plaintiff, defendant appeals.    *Affirmed.*

Messrs. DINES, WHITTED & DINES, and Mr. J. G. McMURRY, for appellant.

Messrs. RHODES & LEE, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This action was brought to recover damages arising from the construction and operation by appellant of a railroad near the southerly line of appellee's premises, which he occupied as a home, in the city of Fort Collins.

From a blue print of a map of the premises introduced as an exhibit by appellant, and appellant's witnesses, it is learned that appellee's lot is 75 feet wide, fronts south on College avenue, with a depth of 175 feet; that appellant's railroad is constructed upon an embankment 19 feet high with a base width of 47 feet, crossing College avenue upon a viaduct 65 feet long at an angle of about 45 degrees, 19 feet above the roadway of the avenue; that no part of appellee's premises has been taken or occupied by appellant; that the fill or embankment of appellant extends from the northeast to the south-

west, of the uniform height of 19 feet; that from a point in the center of the front of appellant's dwelling house, due east to the base of the fill or embankment is about 110 feet, and from a point in the center of the south side of appellee's dwelling house to the base of the fill is about 60 feet, thus establishing the fact that the view from the house is cut off on the east and south. It also appears from the evidence that the height of the embankment and house are about the same.

The complaint states a cause of action, and alleges as special damages: (1) an interference of appellee's right of ingress and egress to and from his premises; and, (2) by reason of smoke, soot, ashes, cinders and sparks of fire emitted from passing engines.

Evidence was introduced by appellee in support of these allegations of the complaint and the jury were correctly instructed as to this phase of the case.

The doctrine announced by this court in *Gilbert v. G. S. L. & P. Ry. Co.*, 13 Colo. 501, was recognized by the trial court in instructions to the jury, to the effect, that the mere fact that plaintiff may use the street known as College avenue more frequently going to and from Fort Collins, than other people, and that he may be more frequently inconvenienced by the construction across said avenue, does not entitle plaintiff to recover damages against the defendant for the construction and operation of said road, and that the damages found must be such as apply especially to plaintiff's property.

The correct measure of damages in actions of this character, as defined by this court, was given to the jury in the instructions.

To sustain the judgment of the court below appellee relies upon *City of Denver v. Bayer*, 7 Colo. 113, where it is said at page 117:

"The abutting owner may well be presumed to have taken into consideration the fact that the grade of the street might be raised or lowered, that pavements might be laid and bridges and culverts constructed, and that a street railroad even might be built and operated thereon; and it may fairly be presumed that in purchasing he anticipated and allowed for the possible or probable damages to result from these and similar changes, or that he signified this consent thereto, and thus deprived himself of any right to compensation therefor.

"But no such presumption, consent, or estoppel applies to the use of the street by an ordinary railroad."

And at page 118:

"The railroad is a public benefit. It is generally of great advantage to the town or city to or through which it is built and operated, and for any injury or annoyance occasioned thereby which an adjoining owner shares in common with the general public, he ought not to recover; but, for those damages which are peculiar to him, which affect his property and impair its value without injuring that of his neighbor, he ought, in justice, to receive compensation."

And *Longmont v. Parker,* 14 Colo. 386, where it is said, at page 390:

"Under the decisions of this court, the questions for the jury to determine from the evidence were whether the plaintiff suffered damages different in kind from those suffered by the general public, and whether the property of plaintiff had been lessened in value by the acts of the defendant."

It is contended by appellant that witnesses were permitted, over its objection, to state their opinions as to the amount of damage to the property, thereby usurping the functions of the jury, and that such

witnesses were called as experts and were not qualified as such.

The objections interposed by appellant were general. The better practice is, in cases of this character, that to make available an exception to the admission of testimony, upon the ground that it calls for the opinion of the witness and thereby usurps the province of the court or jury, the objection must be specifically taken that the question calls for a fact not provable by opinion.—10 Am. & Eng. Enc. of Law (2nd ed.) 922, and cases cited.

The testimony objected to follows:

"Q.—What, in your judgment, would this 75-feet frontage that has been described here, with the house on the place, be worth without the track there? A.—$700.00 or $800.00.

"Q.—*Now then, taking into consideration the location of the track, the method of construction, and all the various phases that go to affect this property, what do you say is the depreciation by reason of the construction of the track at that point, its manner of construction and use?* A.—I should think $300.00 or $400.00.

"Q.—I will put the question in another way. What do you say is the present value of the property? A.—I should say about $400.00."

Another witness was interrogated and answered as follows:

"Q.—Mr. Dwyer, what would you say would be the value of that property provided there was no railroad constructed there? A.—$800.00.

"Q.—Now then, taking into consideration its present status with the railroad there, etc., what would you say is its present value? A.—About $400.00.

"Q.—Now then, I will ask you this question: Take that property without the railroad there; what,

in your judgment, would be its rental value?
A.—$12.00 to $15.00.

"Q.—Now then, with the railroad there, and in its present condition, what would you say would be its rental value?   A.—About $7.00 to $8.00."

Another witness was interrogated and answered as follows:

"Q.—Mr. Brooks, what, in your opinion, would be the value of that property if there was no railroad there?   A.—I would value it at $1,000.00 before the railroad was put there.

"Q.—And what would you say its value is now? A.—I wouldn't value it more than half to three-quarters to what it was before."

The objection interposed to all of the above questions was that they were "incompetent, irrelevant and immaterial, and that the witnesses had not shown special qualification."

With the exception of the question italicized, we do not believe that the questions objected to come within the rule which prohibits questions and answers which invade or usurp the province of the jury, as involving substantially everything which the jury are called upon to determine.

All of the questions, excepting the one above noted, called for the value of the property or its rental value at a time before the construction of the railroad and its value after that fact, leaving to the jury the determination of the question they were called upon to decide.

The question italicized was undoubtedly improper, and if the objection to the same had been specific, as it should have been, it would undoubtedly have been modified or withdrawn.

If there was error in the ruling upon this question, such error was without prejudice, as the question immediately following was in proper form,

although this latter question was objected to upon the same grounds.

An examination of some of the numerous authorities cited by counsel for appellant. will clearly indicate that the questions there under consideration to which the rule was applied, distinguishes the case at bar from such authorities.

In *Chicago & Alton R. R. Co. v. Springfield, etc., R. R. Co.*, 67 Ill. 142, the question presented was the amount of damages caused to one railroad by another railroad crossing the right of way and track of the other. A witness was asked: "If you put in the cut the work you propose to do and have described, what would be the *damages* to the defendant?" The witness answered: "There would be no *damages.*"

In *Hartley et al. v. Keokuk, etc., Ry. Co.*, 85 Ia. 455, the action was to recover damages alleged to have been sustained by plaintiff by the taking of a right of way by defendant for its railroad. A witness was asked this question: "What, in your judgment, is the difference in fair market value of your farm, taken as a whole, before the railroad ran through it and after? What was the *damage* to you at the time the railroad was constructed in 1880?" The answer was: "The *damages*, I do not think, would be less than eight hundred dollars or near same."

In *Wichita, etc., Ry. Co. v. Kuhn*, 38 Kan. 675, a deposition was introduced in evidence which contained the following question and answer:

"Q.—*How much less, in your opinion, is this farm worth* after the railroad company had established its track through it, irrespective of any benefits from any improvements proposed by the railroad company to be derived from said track, taking into consideration all incidental loss, inconvenience and

*damages*, present and prospective, which may be reasonably expected or shown to exist from the maintaining of said railroad track, to be continued permanently? A.—About $2,100.00.''

In *Roberts v. New York, etc., Ry. Co.*, 128 N. Y. 455, the question was: ''To what extent, if at all, in your judgment, is the value of Mr. Roberts' four buildings on Third avenue, excluding from consideration the house on Ninety-ninth street; to what extent, in your judgment, is the value of that property *damaged*, if at all, by the presence of the structure and the running of trains?'' The witness answered that the diminution extended from about $110,000 to $80,000, including the loss to the fee value simply.

In *City of Omaha v. Kramer*, 25 Neb. 489, the question was: ''In your opinion, what was the *damage* to that property, if anything, by the construction of this viaduct?''

In *Columbus, etc., Ry. Co. v. Gardner*, 45 Ohio St. 309, the question was: ''What *difference* is there in the value of the property with the track there, and with it somewhere else?''

In *Old v. Keener*, 22 Colo. 6, the question was: ''How much has that ditch *damaged* that property by virtue of its being in its present condition, and not being maintained as a proper ditch?''

It will be noticed that in all of the above questions the words ''damage,'' ''depreciation,'' ''difference in value,'' or equivalent expressions were used which called forth the condemnation pronounced upon them by the courts, for the reason, as stated, that it called for an opinion from the witness covering the very question which was to be settled by the jury, and was so conclusive as to leave the jury no other duty but that of recording the finding or opinion of the witness who had testified.

In the case at bar the questions objected to, with the exception stated, are not subject to the criticism above stated, and there was no error of the court in overruling the general objections interposed to such questions.

Appellant contends that the witnesses whose testimony is above set forth were not qualified to testify.

In *Germania Co. v. Ross-Lewin,* 24 Colo. 43, 53, it is said:

"In some states it has been held that the decision of the trial court upon the competency of a witness to testify as an expert is conclusive; but we think the contrary rule is supported by the weight of reason and authority. It has the sanction of the supreme court of the United States, and should be followed in order that the practice in the state and national courts may be similar. In the case of *Stillwell & Bierce Mfg. Co. v. Phelps,* 130 U. S. 520, this rule is stated as follows: 'Whether a witness called to testify to any matter of opinion, has such qualifications and knowledge as to make his testimony admissible, is a preliminary question for the judge presiding at the trial; and his decision is conclusive unless clearly shown to be erroneous in matter of law.' "

We cannot say, from the record in this case, that the decision of the trial judge was clearly erroneous in matter of law. On the contrary, we believe that the witnesses qualified themselves to testify to the matters about which they were interrogated; no serious attempt was made upon cross-examination to show that they were not qualified.

After the jury was impaneled, appellee was allowed, over the objection of appellant, to amend his complaint in this particular. The complaint read, "Commencing at the northeast corner of block 24";

the complaint, as amended, read: "Commencing *at a point* 77 *feet south of* the northeast corner of block 24."

It is objected that the amendment allowed appellee to recover for a piece of property wholly different and distinct from the property described in the complaint, and that thereby the cause of action was changed.

With this contention we do not agree. The cause of action after the amendment remained the same as that stated in the complaint. Under the liberal provisions of our code, the amendment having been made to correct a mistake, it was within the discretion of the court to allow it.

No prejudice to appellant appearing therefrom or being claimed, if there was error in the ruling, which we do not decide, we must disregard it.

There was no error in refusing to allow the introduction of the assessment roll showing the valuation of the property for assessment purposes, made by the county assessor.

It is a notorious fact that the assessment of real property in this state, made by county assessors, affords no criterion whatever of the value of real property.

Conceding that one objectionable question was allowed to be asked and answered, it does not follow that the judgment should be, for that reason, reversed.

Upon an examination of the whole case, it cannot be said that appellant was prejudiced or that its substantial rights were affected by such error.

Perceiving no prejudicial error in the record, the judgment will be affirmed.    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GODDARD concurring.