(No. 29805.—

HYDE GILLETTE, Trustee, *et al.,* Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed March 19, 1947.*

. BARNET HODES, Corporation Counsel, (JOHN J. MORTIMER, EUGENE WACHOWSKI, and PAUL DENVIR, of counsel,) all of Chicago, for appellant.

CASSELS, POTTER & BENTLEY, and McDERMOTT, WILL & EMORY, both of Chicago, (WILLIAM S. WARFIELD, III, L. H. VOGEL, and FRANCIS J. NOSEK, of counsel,) for appellees.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

The city of Chicago passed an ordinance to build certain subways under designated streets of the city of Chicago, among which was one under Dearborn street, and along the east side of the Hartford Building, located at the corner of Dearborn and Madison streets. The Hartford Building was owned by appellees.

The subway was constructed by what is known as the shield method, which consisted of pushing a circular shield about twenty-five feet in diameter underneath the soil to create the tunnel, which later was surfaced and lined for the purpose of transportation of the public by conveyances. The shield when pushed forward by a number of hydraulic jacks permitted soil in front to flow to the interior through holes or openings in the front, where it was carried away. The size of the openings in the shield was regulated according to the density of the soil, or the substance in front.

Two of these tunnels were built under the surface of the street, parallel with each other, and the bottom of the tunnel was lower than the bottom of the foundations of the Hartford Building. Apprehending danger to their foundations, and hence to the building itself, upon the advice of engineers and architects the owners of the build-

ing built caissons under their foundations down to the bed rock, so that any flowage or shifting of the soil would not injure the structure of the building. The theory of the plaintiffs was that there was a duty upon them to reasonably anticipate any damage which might accrue by reason of the construction of the tunnels, and that it was the duty of the city of Chicago to reimburse them for the reasonable costs of installation of the caissons, necessitated by the building of the tunnel.

There seems to be no dispute upon the legal theory on which the plaintiffs brought this suit, but only that what was done by the plaintiffs was not reasonably necessary for the protection of the building, and, if necessary, that special benefit to the property equal to the cost was enjoyed by the plaintiffs by reason of the improvement. The theory of the plaintiffs was that such caisson construction was necessary, and the answer of the defendant, after denying the knowledge of the steps taken by the plaintiffs to minimize the damage, denied that the property, or the persons in the property, would have been damaged in any way by the proposed subway construction, and denied that the installation of the caissons was reasonably necessary for the protection of the plaintiffs' property from any damage which might be caused by the construction of the subway.

The trial of the case centered around the question whether the plaintiffs were reasonably justified in expending the money for the protection of the building, and the trial, in the superior court of Cook county, resulted in a verdict in favor of the plaintiffs, which was affirmed by the Appellate Court, and we have allowed an appeal to this court.

The principal contention made by appellant is the action of the court in sustaining objections to evidence of an expert witness upon the ground the question as propounded to this expert called for an answer that was the question

to be determined by the jury. The evidence of the plaintiffs disclosed that the shields which created the tunnel were more than twenty-five feet in diameter, and that the outer wall of the tunnel itself was of less diameter than this, which would allow some loss of ground or soil and permit settlement; that the bottom of the subway was lower than the bottom of the foundations of the Hartford Building; that the pillars of the building rested on concrete mats, and if the ground slipped from under them it would cause a wracking or listing of the building, and not only damage it but cause the mats or footing to tilt sideways, and bring undue stress on certain of the columns. The character of the clay was described, and the liability of the bearing points to slip off the base of the footings and cause damage, and that the reasonably proper way to avoid any damage was to build concrete caissons from below the mats down to the bed rock, which was done at a cost of over $30,000.

The appellant upon its part offered an expert, who testified he was familiar with the building of the subway, with the construction of the Hartford Building, with the pressure of the building per square foot upon the mats, and with the bearing capacity of the clay beneath the building, and gave a general description, after which he was asked the following question: "Have you an opinion, based upon your knowledge of the soil conditions and of the type of construction of the Hartford Building, and having in mind the shield method of construction of the subway, have you an opinion whether shoring or underpinning measures were necessary during the construction of the subway?" The court sustained an objection to this question upon the ground that the answer would invade the province of the jury.

It is to be noted that the question propounded was based upon the witness's own knowledge of the soil conditions, his own knowledge of the bearing capacity of the

soil, his own knowledge of other soil investigations made by him, and his own knowledge of the shield method of construction. There was no hypothetical question propounded to the witness. The answer sought, and which he gave out of the presence of the jury, was: "My opinion is that no shoring or underpinning was necessary in the case of the Hartford Building." If the work done by the plaintiffs was not reasonably necessary they were not entitled to recover, and, if it was reasonably necessary, the city was liable to reimburse them. Thus, the answer which the witness proposed to give was exactly the question the jury was to determine in ascertaining whether the ·plaintiffs or the defendant would receive its verdict.

As early as *Chicago and Alton Railroad Co.* v. *Springfield and Northwestern Railroad Co.* 67 Ill. 142, the same question had been before this court for consideration. That case involved a cut being made under another railroad, and an expert witness, after describing how the work should be done, in answer to a question said: "There would be no damage." We reversed the case upon the ground that it was an opinion covering the very question which was to be settled by the jury, and so conclusive of it as to leave to the jury no other duty but that of recording the finding of appellee's witnesses. We used this language: "It amounts to nothing more nor less than permitting the witnesses to usurp the province of the jury. By this we do not mean to be understood as holding that it is incompetent for experts, such as engineers, to give their opinions in this case in respect to matters which may form the proper ingredients of a verdict. But what we mean is, that, where the witness is an expert, and it is competent for him to give an opinion as to such ingredients of a verdict, still it is not competent to ask the opinion of witnesses in such way as to have it cover the very question to be found by the jury."

This case has been cited and followed a great many times. In a malpractice case we held that it was error to permit an expert to give his opinion as to whether, from all of the evidence in the case, the defendant was guilty of malpractice or not, that being a question for the jury. (*Hoener* v. *Koch,* 84 Ill. 408.) The opinion of witnesses should not be asked in such a way as to cover the very question to be found by the jury or court, (*Illinois Central Railroad Co.* v. *People,* 143 Ill. 434;) nor should the question directly call upon the witness to put himself in the place of the jury, (*Pyle* v. *Pyle,* 158 Ill. 289;) nor should opinions be asked in such a way as to cover the very question to be determined, (*Hellyer* v. *People,* 186 Ill. 550; *Illinois Central Railroad Co.* v. *Smith,* 208 Ill. 608; *Sokel* v. *People,* 212 Ill. 238;) nor should an expert be asked as to whether a bank is insolvent when that is the very question to be decided, (*People* v. *Paisley,* 288 Ill. 310;) nor may a physician be asked whether or not certain facts growing out of a collision did or did not bring on a malady. *Fellows-Kimbrough* v. *Chicago City Railway Co.* 272 Ill. 71.

We have also held that it is not proper to ask a witness, called upon as an expert, a question which does not embody a hypothetical statement of the facts, but which directly calls upon the witness to place himself in the place of the jury. (*Pyle* v. *Pyle,* 158 Ill. 289.) The opinion of an expert is based upon a state of facts which is assumed to be true, and he is not permitted to express an opinion as to whether the evidence establishes the assumed state of facts rather than some other state of facts which the evidence tends to prove. *Goddard* v. *Enzler,* 222 Ill. 462.

In *Keefe* v. *Armour & Co.* 258 Ill. 28, an expert witness was called upon to testify as to whether or not a certain manufacturing procedure was reasonably safe. In holding that this was improper examination, among other things the court said: "Of course, the jury was entitled

to the aid of experts in determining the existence or non-existence of facts not within the common knowledge from which a conclusion would arise whether the method was reasonably safe. It was competent to prove that the conditions stated in the hypothetical question would be liable to form gases; that such gases would be explosive and would explode by ignition or at a certain temperature, as well as any other facts which would enable the jury to draw an inference as to the ultimate fact to be determined, but it is the rule of this court that an expert witness must not take the place of the jury and declare his belief as to the ultimate fact."

And in *Maton Bros., Inc.* v. *Central Illinois Service Co.,* 356 Ill. 584, we held that where evidence is conflicting a witness should not be allowed to express an opinion as to what evidence he has heard at the trial, without detailing in a hypothetical question an assumed state of facts as the basis of an opinion.

The holdings in all of these cases go back to what was said in *Chicago and Alton Railroad Co.* v. *Springfield and Northwestern Railroad Co.* 67 Ill. 142, and that is that opinions may be given in respect to matters which form the proper ingredients of the verdict in the case, and, in the present case, these were the type of the construction of the Hartford Building, the kind of footing used to support it, the question whether soil would be displaced in front of the shield excavating the tunnel, the character of the soil, and many other facts which would or would not make it reasonably necessary to protect the building from any disturbance of the soil created while the tunnel was being built at this site. The expert of the city did not undertake to give an opinion as to the different ingredients which went to the necessity of the underpinning of the building. He did not give any expert opinion as to whether there would be any flowage of the soil away from the building, or as to whether the footings under the columns

would shift from their places, or as to whether the soil would be raised in front of the shield as it progressed in the ground, but undertook to say that from *his* knowledge the shoring or underpinning measures were not necessary. If such measures were not necessary, it was the duty of the jury to return a verdict for the defendant, and, hence, if the court had allowed the witness to answer the question in the manner he proposed it would simply be telling the jury that in his opinion the verdict should be for the defendant. Under the authorities, an expert, whether he gives an opinion on a hypothetical state of facts or from his own personal knowledge, may not be allowed to invade the province of the jury by answering a question to cover the specific matter to be determined by the jury, and therefore the ruling of the trial court was proper.

Appellant also urges that defendant's instruction No. 22, defining special benefits, was improperly refused by the court. The instruction was abstract in character and did not include all of the essential elements to constitute special benefit under our decisions in such cases, and, besides, was adequately covered by plaintiffs' instruction No. 7 and by defendant's instruction No. 19.

The principal contention in this case has been, and was at the trial, as to the propriety of the court's ruling in sustaining objections to the testimony of appellant's expert. We are of the opinion the court properly sustained the objection made by plaintiffs, for the reasons pointed out above. Other points are raised by appellant, which we have carefully considered, but which it is not necessary to discuss in this opinion.

The judgment of the Appellate Court for the First District is affirmed. *Judgment affirmed.*